CATHERINE A. JORITZ (petitioner) vs UNIVERSITY OF KANSAS (University)

<u>EMPLOYMENT DISCRIMINATION COMPLAINT (addendum)</u>

Introduction:

The Petitioner is an American citizen and an internationally recognized, award-winning animator and educator. Prior to the Petitioner's appointment as Assistant Professor at the University, she lived and worked in Germany as an animator, freelance artist and educator for over thirty years. The Petitioner is fluent in German. While still a resident of Germany, the Petitioner also held full-time teaching positions at universities in the United States for a total of four academic years prior to 2012.

In the summer of 2012, Petitioner moved from Dortmund, Germany to Lawrence, Kansas, USA, in order to begin a tenure-track Assistant Professor appointment at the University teaching primarily animation, special effects and experimental video production.

As a tenure-track Assistant Professor in the University's Film & Media Studies Department, the Petitioner's contract presumed contract renewal absent some cause to the contrary.

The Petitioner was annually evaluated on Teaching (40%), Research: Creative and/or Scholarly Activity (40%), and Service (20%).

The Petitioner always received "Good" or "Very Good" ratings for these categories. "Good" and "Very Good" are consistently defined throughout the University evaluation policies as meeting or exceeding expectations for tenure.

The Petitioner was awarded merit salary increases (increased salary based on merit) for two of her first three years of employment at the University. Former Film & Media Studies Chairperson Tamara Falicov confirmed via an email dated June 11, 2016 that she believed there was a merit salary freeze the following year.

In May 2014 the homepage of the University website featured an article about the Petitioner's artwork and her achievement to present her art and scholarly research at the international Conference IKON, held in Croatia. The University homepage feature is an honor bestowed to only a small fraction of University faculty members.

The Petitioner continued to receive prestigious national and international recognition for her creative work (i.e. research). The Petitioner was an active member of her department, developed new courses and outfitted two new University animation studios.

The Petitioner was awarded several competitive University grants and other University funding in order to research a long-term project about the German silhouette animation pioneer, Lotte Reiniger (1899 – 1981). Her research was conducted in Germany, Canada and the USA.

On January 14, 2016 the Petitioner was awarded the highly competitive University's *Hall Center for the Humanities Creative Fellowship* for her creative research. The University later rescinded the Fellowship, violating the terms of the University's Fellowship contract with the Petitioner.

On March 16, 2016, the Petitioner emailed the University College of Liberal Arts Dean Lejuez the news that her German-related animated short film "Zapf Dingbats – A Tribute to Hermann Zapf" had been accepted to a renowned short film festival in Germany: 62nd International Short Film Festival Oberhausen. She informed Dean Lejuez that this acceptance counts as a "major peer-reviewed accomplishment". University administrators including Dean Lejuez, Interim Provost Rosen and Chancellor Grey-Little later ignored her international, German-related research accomplishment, claiming instead that the Petitioner's research was "insufficient".

In the spring of 2016 the University recognized the Petitioner with the J. Michael Young Academic Advisor Award, a student-nominated award for teaching and advising excellence.

On May 13, 2016 the Petitioner was informed via email of her "non-reappointment" (termination).

3.  When did the discrimination occur? Please give the date or time period:

Time period: spring 2014 – ongoing

Note: The Petitioner is in the process of submitting a second EEOC complaint to include more recent events and and will amend this petition accordingly.

10.  State here, as briefly and clearly as possible, the essential facts of your claim. Describe specifically the conduct that you believe is discriminatory and <u>describe how each defendant is involved in the conduct:</u>

During the spring semester 2014, the Petitioner's second year of employment at the University, the Petitioner taught a Basic Video course for the first time. Several students were dissatisfied with the course but did not inform the Petitioner. Instead, they complained to the then-Department Chair, Professor Tamara Falicov, who did not send them to the Petitioner to seek resolution, as is an accepted university practice, but instead informed the students that they could express their dissatisfaction at the end of the semester, in writing, via anonymous student evaluations. The Petitioner received copies of the student evaluations during the summer of 2014, after students were gone.

The student evaluations included handwritten angry, aggressive, anti-German comments, including criticizing the Petitioner's pronunciation of words and the fact that the Petitioner talked about Germany, in and outside of class:

   *"She is a Nazi sympathizer"*, she *"drove us nuts frequently mispronouncing well-known words...Talked about Germany all the time"*, she talked about *"German feminism"*, *"...pronounced words absurdly. I would like nothing more to see her fired from the film department." "I've heard she told a student that schools don't grade like KU in Germany, but we're at KU."*

The student comments were scanned and thereafter became a permanent part of the Petitioner's University performance record. These discriminatory, anonymous comments were included in every important evaluation the Petitioner underwent, negatively affecting her chances for salary increases and continued employment.

The Petitioner recognized that the student comments were evidence of anti-German discrimination against her. (She later discovered the EEOC's category, "national origin", which includes perceived national origin.) She was concerned about the anger in the student comments, which reflected a hostile work environment. At various times the Petitioner met with the following faculty members to discuss the discrimination and her concerns: former Department Chair Professor Tamara Falicov, current Department Chair Professor Michael Baskett, and members of the Faculty Evaluation Committee consisting of Professors Matthew Jacobson, Catherine Preston and Kevin Wilmott. The Petitioner also met with, on separate occasions, University administrators

including the College of Liberal Arts Dean Carl Lejuez, Director of the School of Arts Professor Henry Bial and Chancellor Bernadette Gray-Little. All of the aforementioned persons had a University-policy obligation to report allegations of discrimination to the University's Institutional Opportunity and Access (IOA) office. Henry Bial did so one time. The others did not.

The Petitioner requested that the University remove the anti-German comments from her record and she suggested ways to address the issue of student discrimination against faculty in the future, specifically in student evaluations. The Petitioner's complaints of discrimination were trivialized, ignored and/or became a catalyst for retaliation by University administrators. The University did not remove the discriminatory student comments from the Petitioner's record and took no action to prevent such discrimination from occurring in the future.

Early in December 2015 the Petitioner approached the University's Office of Institutional Opportunity and Access (IOA) to discuss her concerns of discrimination based on national origin, including the discriminatory student comments, which would negatively impact her performance record on an ongoing basis, forever. The IOA representative, Joshua Jones, asked the Petitioner when the student comments had been made, then promptly told her that the time limit for a complaint had passed (180 days). The IOA representative did not seem informed about or interested in faculty evaluation procedures. The Petitioner noted that the IOA representative seemed more interested in disqualifying her, the accuser, than solving the problem.

The Petitioner became "a closet German" in her workplace, fearing end-of-semester student evaluations to the point of panic and near nausea.
In 2015 the Petitioner underwent a major performance evaluation called the Progress Toward Tenure Review (PTTR). In a document titled the 2014-2015 Progress Toward Tenure Review Initial Review Evaluation Document, complied by the departmental PTTR committee, the University – assuming the Petitioner would never see it – blamed the Petitioner's German background for the students' negative responses, claiming "they may also be due to the fact that she taught extensively in Germany for many years before teaching at KU, and she has had some difficulty in adjusting her communicative and teaching skills to her new environment and culture". There was no mention of the student hostility and discrimination directed toward the Petitioner, nor of any positive effects the Petitioner's German background had on her teaching.

Repeatedly, the University refused to provide the petitioner with documents related to her performance, which University policy entitled her to see. Without access to the documents, the Petitioner could not respond to them or refute them, denying her the right to due process according to University policies. Without access to the documents, the Petitioner was denied her rights to file grievances or take other appropriate actions. She could not hold anyone accountable for the content of the very documents written to malign her reputation and destroy her career.

Weeks after the University initially refused to provide the Petitioner with the PTTR Evaluation Document, it was finally emailed to her. In addition to the discriminatory comment about her German background, the Petitioner discovered multiple policy and procedural violations that negatively affected her evaluation.

Chair Falicov told the Petitioner that she was not entitled to a copy of the PTTR Evaluation Document and instructed her to delete it. Because there was no University policy that prohibited a faculty member from seeing the Initial Review Evaluation, and the Initial Review Evaluation was not marked "confidential", the Petitioner did not delete it.

The 2014 negative student evaluation comments marked the beginning of the Petitioner being subject to an ongoing, hostile work environment in which the University continuously violated policies and procedures that directly, negatively affected evaluations critical to her employment. Additionally, the University ignored and/or diminished the Petitioner's achievements as well as positive evaluations from the Petitioner's colleagues.

The University evaluated the Petitioner's teaching with an impermissibly narrow scope of criteria and misconstrued information in order to disparage her record. The University fabricated research expectations that violated the Petitioner's academic freedom. The University isolated the Petitioner from her colleagues during a major performance evaluation, denying the Petitioner Freedom of Association, academic freedom and due process. In a major performance evaluation letter the new department Chairperson, Michael Baskett, claimed the Petitioner had multiple negative behavioral issues, despite the fact that he had never communicated any issues to her whatsoever. "Behavior" is not an University evaluation criterion, but Baskett nevertheless claimed that "disruptive, disrespectful" and "dismissive" behavior diminished the Petitioner's "Service"

(20% of her evaluation). Although the Department Chair had been Chair for approximately 6 months prior to writing his evaluation letter, at no time did he inform the Petitioner of any problematic issues, behavioral or otherwise. Because the University violated its own policy by denying the Petitioner access to Baskett's letter, its content was kept secret from her, denying her the right to respond to and refute it, i.e. denying her due process.

In the same major evaluation, the Petitioner was evaluated on research, which comprises 40% of her evaluation. Although the Petitioner had several projects in-progress, Baskett ignored the others, targeting only the Petitioner's German-related research by inserting "factually inaccurate" (as recognized by the University's Faculty Rights Board) information about the Petitioner's access to archives in Germany and wrongly describing other aspects of her German-related research. He opined about her (in)ability to complete her German-related research and claimed her intent to write a book was "unrealistic". After omitting and diminishing the Petitioner's other national and international research achievements, Baskett then proclaimed in his evaluation letter that the Petitioner's research was "not sufficient for progress to tenure".

Every subsequent University committee and administrator accepted Baskett's claims as truth without question or proof. This, despite the fact that a departmental committee (two women, one man) agreed that the Petitioner had made sufficient progress toward tenure in all categories the Petitioner was evaluated on: Service, Research and Teaching. The committee's findings were based on the Petitioner's proven record, documented in her submitted dossier. Chair Baskett's "findings" were based on hearsay, speculation and fabrications created to malign the Petitioner's record and terminate her employment.

The disparaging content of Baskett's evaluation letter was not only repeated by a subsequent University evaluation committee (College Committee on Appointments, Promotion & Tenure, also CCAPT) and University administrators, Baskett's "factual inaccuracies" about her German-related research were changed into different, bigger "factual inaccuracies" by the CCAPT. The CCAPT committee, represented by its Chair, Professor Stuart MacDonald, targeted the Petitioner's German-related research even more vehemently than Baskett. Stuart MacDonald letter, which summarized the CCAPT's findings, included the outrageous and baseless statement that the Petitioner's "...potential interviewees are lapsing into senility and ill health."

6

University Counsel, Rachel Rolf, revealed in a document she authored dated April 30, 2016 that Dean Lejuez violated the Progress Toward Tenure Review for the College of Liberal Arts & Sciences by wrongly inserting himself into the CCAPT review process, impermissibly influencing and directing the CCAPT's focus when evaluating the Petitioner's research record. The CCAPT review process is one step in a tiered review process that, per University policy, should remain independent from the Dean. It did not.

The University denied the Petitioner due process during performance evaluations, ultimately terminating her employment based on documents that contained factually inaccurate information, baseless allegations, preposterous fabrications and outrageous statements. The University withheld these documents from the Petitioner, making it impossible for the Petitioner to know of their contents and to subsequently defend herself.

After the Petitioner reported the anti-German discrimination and policy/procedural violations to several University administrators, the same University administrators did nothing to address the violations. Instead, the University began the process to terminate the Petitioner's employment. Because the University took no effective measures to halt the policy and procedural violations that adversely affected the Petitioner, violations continued and continue to be committed against the Petitioner with impunity, resulting in a hostile, untenable workplace.

In April 2016 the Petitioner attempted to prevent her termination by meeting with Provost Rosen to report the discrimination and University procedural and policy violations the Petitioner faced. The Petitioner was denied a meeting with the Provost and admonished in an email by Mary Lee Hummert, Vice Provost for Faculty Development, who wrote, "it is not appropriate for her (Provost Rosen) to talk to you", once again denying the Petitioner due process. Hummert's email was dated April 13, 2016. A month later the Petitioner's employment was terminated.

The Petitioner was also subject to sex discrimination by a tenured, male professor in her department, who served on several of the Petitioner's performance evaluation committees. The Petitioner brought his sexist and aggressive behavior toward her to the attention of her supervisor, Chair Baskett, and requested that the faculty member be recused from a committee that would evaluate her. As way of response, Chair Baskett claimed in his evaluation letter, that the Petitioner "has disparaged and impinged the reputation of PTTR

Committee members in unsolicited emails to the Chair" ("the Chair" being himself). Criticizing the Petitioner for reporting to him hostile and discriminatory behavior by her male colleague as "unsolicited emails" compounded the discrimination against the Petitioner. The Chair's written evaluation statement punished the Petitioner (without her knowledge, as she was not permitted to see the letter) for informing him about the discrimination she faced. This was a declaration, in an evaluation letter, that the Petitioner had no right to complain. No action was taken against the male professor, who was subsequently promoted.

As stated, Chair Baskett and other University administrators denied the Petitioner due process by denying the Petitioner access to Baskett's aforementioned disparaging evaluation letter, a letter, which was instrumental to the Petitioner's termination. Without access to the Chair's letter, the Petitioner was denied her right to know of its contents and could not respond to them. This further denied the Petitioner her right to include the Chair's evaluation letter in her appeal to the University's Faculty Rights Board against her termination, again denying her due process. To date the Petitioner is not aware of any action having been taken by the University to sanction Chair Baskett or other University faculty and administrators, who have purposely maligned the Petitioner personally, maligned her performance record and denied and continue to deny her equal rights, including due process, and succeeded in having her employment terminated.

The Petitioner filed a complaint with the EEOC as well as a lawsuit based on the Kansas Judicial Review Act. Since then, University administrators have retaliated by stonewalling the Petitioner's emails.

Discrimination: Denial of Freedom of Speech with Germany as the subject matter, denial of due process:

Early in 2016 the Petitioner had a private conversation with a female staff member about women being mass assaulted in Germany. This conversation took place at Oldfather Studios, where both the staff member and Petitioner work. A male staff member, John Mcluskey, interrupted the women and told them their conversation was inappropriate for the workplace. The Petitioner assured Mcluskey that freedom of speech and the nature of their department (filmmaking and media production and study) permitted the discussion of current events. Later the Petitioner had reason to believe that Mcluskey complained about her to the Department Chair Michael Baskett and that

8

Mcluskey's complaint was used by the Chair to justify the Petitioner's termination. The Petitioner's inquiries about the matter have been met with hostility and a refusal to provide her with any information. Parties involved in refusals to provide her with information are Chair Michael Baskett, John Mcluskey and the School of Art Director Henry Bial. Denying the Petitioner her freedom of speech was discriminatory and indicative of a hostile work environment. Denying the Petitioner her right to be informed of complaints made against her denied the Petitioner due process and contributed to a hostile work environment.

Policy and procedural violations continue to be committed in order to disparage the Petitioner's annual performance evaluations and reputation. She is denied due process and her rights as a faculty member on an ongoing basis and still faces a hostile work environment.

Note: To the Petitioner's knowledge, other faculty members in the Film & Media Studies Department were not abused, as described in this document, nor denied their University rights and constitutional rights by the University. The Petitioner was and continues to be singled out for disparate, unfair evaluation and treatment.

NATURE OF THE CASE

8. The conduct complained of in this lawsuit involves (check only those that apply) Other conduct:

- denying the Petitioner due process
- policy & procedural violations committed in order to terminate the Petitioner's employment and deny the Petitioner due process
- denying the Petitioner her freedom of speech
- isolating the Petitioner from colleagues in her workplace
- threatening the Petitioner in her workplace
- stonewalling the Petitioner's emails and inquiries
- denying the Petitioner academic freedom
- disparate treatment/double standards applied to denigrate the Petitioner

9

12. Note: After termination, faculty members are entitled to a "grace year", which, for the Petitioner, is the academic year fall 2016/spring 2017. The Petitioner's employment will terminate at the end of the spring semester 2017.

## REQUEST FOR RELIEF

a. Reverse the decision of the University and reinstate the Petitioner to her tenure- track position immediately.

b. Reinstate the previously awarded *Hall Center for Humanities Creative Fellowship* to the Petitioner immediately.

c. Grant the Petitioner a University-supported *Research Intensive Semester* within one academic year.

d. Due to research time lost due to the University's denial of the Petitioner's *Hall Center for Humanities Creative Fellowship* and the University's repeated denial of the *Research Intensive Semester* entitled to the Petitioner, the Petitioner requests one additional year to prepare for her tenure review ("tenure clock stopped for one year").

e. In order to assure the Petitioner due process in the future, the Petitioner requests the right to assemble impartial evaluators consisting of University faculty and administrators for her future evaluations as well as the removal of discriminatory, factually inaccurate, and libelous material from her University personnel files and record.

f. The Petitioner requests that the Court grant other and appropriate relief as the Court deems just and equitable.

EXHIBITS

EXHIBIT 1: EEOC right-to-sue letter dated 10.13.16

EXHIBIT 2: Notice of Non-Reappointment letter dated 05.13.16