## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CATHERINE A. JORITZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:17-cv-04002-SAC-KGS |
| ) | |
| THE UNIVERSITY OF KANSAS, et al. ) | |
| ) | |
| Defendants. ) | |

### INDIVIDUAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Carl Lejuez, Stuart J. Macdonald, Bernadette Gray-Little and Michael Baskett (collectively, the "Individual Defendants") hereby offer the following arguments and authorities in support of their Motion to Dismiss Plaintiff's First Amended Complaint:

### NATURE OF THE MATTER BEFORE THE COURT

Plaintiff filed this lawsuit stemming from her 2016 notice of termination as a faculty member at the University of Kansas ("KU" or "the University"). KU's motion to dismiss this lawsuit is currently pending before the Court. *See* Docs. 54, 55. Because the memorandum in support of that motion contains extensive background and facts on this case, the Individual Defendants in this Memorandum provide only a brief synopsis of the allegations most relevant to their specific arguments.

Plaintiff's dispute with the University and the Individual Defendants arises out of her dissatisfaction with the outcome of her tenure-review process, known as the University's Progress Toward Tenure Review ("PTTR"). At the conclusion of that process, Plaintiff was informed that she would be non-reappointed.

1

Plaintiff first filed suit in state court to challenge the University's decision. After consenting to a with-prejudice dismissal of her Title VII claim in that case, Plaintiff then initiated this lawsuit on January 6, 2017, alleging Title VII claims against KU for gender and national origin discrimination, and retaliation. On June 7, 2017, the University filed its first Motion to Dismiss (Doc. 8) (the "First Motion to Dismiss"), seeking dismissal of Plaintiff's original complaint based on, *inter alia*, the res judicata effect of the state court dismissal with prejudice. Although she filed a Memorandum in Opposition (Doc. 19) to the University's First Motion to Dismiss, Plaintiff also filed a Motion to Amend (Doc. 29), seeking leave to file her First Amended Complaint.

After briefing, the Magistrate Judge entered a Report and Recommendation (Doc. 43), granting Plaintiff's Motion to Amend in part. Specifically, in her proposed amended complaint, Plaintiff attempted to add four classes of claims against the Individual Defendants: Title VII claims; Section 1983 claims against the Individual Defendants in their official capacities; Section 1983 claims against the Individual Defendants in their personal capacities; and claims for breach of contract. The court denied as futile Plaintiff's attempt to add all of these classes of claims except Section 1983 claims against the Individual Defendants in their personal capacities. This Court adopted that Report and Recommendation through its Order (Doc. 44) of October 9, 2018.

Accordingly, on November 13, 2018, Plaintiff filed her First Amended Complaint (Doc. 49). Pursuant to the Court's Order, the only claim therein that may be asserted against the Individual Defendants is Count VII,[1] which asserts a claim under § 1983 against the individual

---

[1] Plaintiff identifies this claim as "Count VII" in her First Amended Complaint, although it appears in the document prior to "Count VI." In this motion and briefing, the Individual Defendants will refer to it as Count VII to remain consistent with the First Amended Complaint.

defendants in their personal capacities for alleged constitutional violations. Thus, Count VII is the only claim at issue in this motion to dismiss.

The Individual Defendants now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the § 1983 claim against them. Plaintiff appears to base her claim on supposed violations of her procedural due process rights, as well as violations of her First Amendment rights. With respect to her due process allegations, Plaintiff is prohibited from asserting a § 1983 claim on this basis because she has an adequate form of post-deprivation review—a state proceeding under the Kansas Judicial Review Act ("KJRA"), *which Plaintiff is currently pursuing*. With respect to the First Amendment allegations, Plaintiff fails to allege that the Individual Defendants took any action to constrain any type of protected speech. Further, even if Plaintiff could state a claim under either of these theories, the Individual Defendants are entitled to qualified immunity.

This Court should grant this motion and dismiss the Individual Defendants from this case.

## STANDARD OF REVIEW

Under Rule 12(b)(6), a court should dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a "complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." *Jones v. Core Civic Corp.*, 2018 WL 5112272, at *2 (D. Kan. 2018). While all "well-pleaded facts and reasonable inferences derived from those facts are viewed in the light most favorable to the plaintiff," "[c]onclusory allegations . . . have no bearing upon the court's consideration." *Id.* (internal citations omitted).

## STATEMENT OF FACTS

The following operative facts are taken from Plaintiff's First Amended Complaint, which the Individual Defendants assume to be true only for purposes of this motion and reserve their right to deny them should the case proceed. Further, as discussed above, this memorandum includes a small subset of the allegations central to this motion. For a broader discussion of the factual background, see KU's Memorandum in Support of its Motion to Dismiss (Doc. 55).

The University hired Plaintiff in 2012 as a tenure-track assistant professor in the Department of Film and Media Studies. *Id.* ¶ 11. On July 1, 2014, Plaintiff received an e-mail from her department chair raising performance concerns about the research portion of Plaintiff's work as a professor. *Id.* ¶ 49. In preparation for the tenure-review process (known at KU as the "PTTR" process), each tenure-track professor creates a dossier, which includes student evaluations, peer (faculty) reviews of class observation, a teaching and research statement, and a list of publications and completed work. *Id.* ¶ 53. After submitting these materials, the PTTR was completed, and the committee determined that Plaintiff needed improvement for progress toward tenure and that another failed review would lead to non-reappointment. *Id.* ¶ 55. One of the recommendations in the letter was for Plaintiff to increase service commitments at the national and international level. *Id.* ¶ 56. When Plaintiff saw the written evaluation of her PTTR, she disagreed with the manner in which her scope of research was defined. *Id.* ¶¶ 65-67.

When it came time for the 2016 PTTR, Plaintiff once again disagreed with how the committee viewed the scope of her research. *Id.* ¶ 76. Plaintiff also alleges various "procedural violations" in the PTTR process. *Id.* ¶¶ 84-65, 88-92. Plaintiff raised these issues with various individuals in the department and at the University, and she stated her belief that she suffered "discrimination." *Id.* ¶ 105. In April 2016, Plaintiff received a letter after her PTTR process,

4

which recommended termination. *Id.* ¶ 108. It again raised Plaintiff's deficient research work as the basis for the decision. *Id.* Plaintiff once again believed there were procedural deficiencies in the review committee's work, and she disagreed with the committee's decision to include her inappropriate behavior toward colleagues as a factor in the process. *See id.* ¶¶ 109-121.

Throughout her First Amended Complaint, Plaintiff airs several grievances against the Individual Defendants, alleging that they took certain actions (or failed to take certain actions) that resulted in an unfair PTTR process.

Dr. Baskett, for example, was the Chair of Plaintiff's academic department (Film & Media Studies) during the relevant time period. FAC ¶ 19. Plaintiff alleges that Dr. Baskett failed to follow KU's policies for the PTTR process, causing unnecessary delays and preventing Plaintiff from seeing information she deemed important to the outcome. *Id.* ¶¶ 183-192. She further alleges that Dr. Baskett appointed individuals to the committee that Plaintiff felt were conflicted. *Id.* ¶¶ 184-187. Plaintiff also asserts that Dr. Baskett authored a letter included in Plaintiff's PTTR dossier that Plaintiff believes erroneously represents her academic and research record. *Id.* ¶¶ 191-193. She claims that letter led to an erroneous outcome in her tenure review. *See id.* ¶¶ 121; 208.

Dr. Macdonald served as the chair of KU's College Committee on Appointments, Promotion and Tenure ("CCAPT"), and Plaintiff's allegations appear to stem exclusively from his role as the chair. *See id.* ¶ 18. Essentially, Plaintiff argues that Macdonald and the committee reached an erroneous outcome by relying on improper evidence and ignoring evidence that supported her. *Id.* ¶¶ 116-118; 163.

Dr. Lejuez was KU's Dean of the College of Liberal Arts & Sciences during the relevant time period. *Id.* ¶ 17. Similar to the allegations against Dr. Macdonald, Plaintiff claims that

5

Dean Lejuez failed to acknowledge several of her awards and research progress and did not take seriously her allegations that Dr. Baskett utilized improper processes in the PTTR. *Id.* ¶¶ 197-200. She further claims that Dean Lejuez improperly relied on the supposedly false letter authored by Dr. Baskett and that he improperly relayed those thoughts to members of the CCAPT. *Id.* ¶¶ 200-203.

Finally, Dr. Bernadette Gray-Little served as the Chancellor of KU during the relevant time period and Plaintiff's allegations to relate to that role. *See id.* ¶ 16. Plaintiff essentially argues that Chancellor Gray-Little improperly adopted the findings of the bodies below her, thus rubber-stamping their allegedly flawed findings. *Id.* ¶¶ 209-214.

Plaintiff appealed the decision through KU's administrative appeal process. *Id.* ¶ 125. KU's appeal committee recommended that the Chancellor disregard certain statements from Dr. Baskett in the final review of the decision. *Id.* ¶ 130. On May 13, 2016, KU informed Plaintiff that she would be non-reappointed. *Id.* ¶ 138. KU specifically informed Plaintiff that, even disregarding Dr. Baskett's letter, the record demonstrates inadequate research progress toward tenure. *Id.* ¶ 139.

Plaintiff disagreed with this outcome and, as discussed above, she filed her state-court lawsuit, eventually followed by this lawsuit.

## QUESTIONS PRESENTED

1. Whether Plaintiff can state a claim under § 1983 for alleged procedural due process violations when she has an adequate post-deprivation remedy (which she is actively pursuing) under the Kansas Judicial Review Act?

2. Whether Plaintiff alleges any deprivation of constitutionally protected speech when the supposed speech at issue would be made as an employee on a matter of personal interest?

3. Whether Plaintiff can state a claim against Individual Defendants without identifying what specific conduct of each defendant was supposedly unconstitutional?

4. Whether the Individual Defendants are entitled to qualified immunity on the § 1983 claim Plaintiff asserts?

## ARGUMENT AND AUTHORITIES

In her four-paragraph articulation of the legal basis for her claim against the Individual Defendants under 28 U.S.C. § 1983 (*see* FAC ¶¶ 234-37), Plaintiff alleges violations of her rights to procedural due process and free speech. Both theories, however, fail to state a claim and should be dismissed as a matter of law.

### I. PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM FAILS

#### A. Plaintiff's due process claim fails as a matter of law because she has available (and is utilizing) an adequate post-deprivation remedy.

As this Court is aware from KU's briefing on its motion to dismiss, and as Plaintiff has admitted, separate and apart from this lawsuit, Plaintiff has sued KU in Kansas state court, alleging that the very same actions giving rise to this lawsuit violate the KJRA. *See* Docs. 55 at 10-14; 55-1; 67 at 29-31; 67-1, Ex. 2. Through that action, she raises several of the same procedural deficiencies she alleges here and asks that court to upend KU's discretionary decision that Plaintiff would be non-reappointed in her position. That KJRA procedure provides Plaintiff with the ability to challenge all aspects of the process and decision she believes improper.

Irrespective of the outcome of that case, and irrespective of the specific arguments Plaintiff offers in that case, the mere *availability* of the KJRA remedy precludes any procedural

7

due process claim that Plaintiff makes in this case.  This line of reasoning is even more poignant here, where Plaintiff is actually availing herself of the KJRA procedures right now.

Put simply, "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful *postdeprivation* remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (emphasis added).  As this principle relates to the type of claims Plaintiff raises here, courts have explained that the mere availability of state administrative review procedures eliminate entirely the potential for a constitutional claim under 28 U.S.C. § 1983 (such as the claim Plaintiff brings against the Individual Defendants here).  For example, the Second Circuit recently rejected an expelled medical student's procedural due process claim when he could have raised the claim through the state's administrative appeals process:

> [T]he district court concluded that Attallah could not plausibly claim the deprivation of a protected interest without due process of law because an adequate post-deprivation remedy in the form of an Article 78 proceeding was available under state law.  *See Attallah v. N.Y. Coll. of Osteopathic Med.*, 94 F. Supp. 3d at 454-58.  That ruling comports with controlling precedent.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that alleged state deprivation of property does not violate procedural due process "if a meaningful postdeprivation remedy for the loss is available").  Thus, even if, as Attallah alleges, state employees acted in concert with administrators at Atallah's private medical school to expel him, any ensuing deprivation of property or liberty does not give rise to a procedural due process claim under § 1983.

*Attallah v. New York Coll. of Osteopathic Med.*, 643 F. App'x 7, 9-10 (2d Cir. 2016); *see also Gallo v. Miller*, 983 F.2d 1076 (Table), *1 (9th Cir. 1993) (unpublished) ("Because the state of Nevada makes available to Gallo adequate post-deprivation remedies under Nevada Rev. Stat. §§ 73.010 and 41.036 (1989), he cannot state a claim upon which relief can be granted under the procedural component of the Due Process Clause of the Fourteenth Amendment.").

8

Indeed, consistent with this reasoning, the District of Kansas has specifically held that the existence and availability of review under the KJRA forecloses claims for violation of procedural due process against agencies within the KJRA's scope. *Hartwick v. Bd. of Trustees of Johnson Cty. Cmty. Coll.*, 782 F. Supp. 1507, 1514 (D. Kan. 1992); *Settle v. Ladesic*, 1990 WL 136794, at *2 (D. Kan. 1990). Thus, Plaintiff's procedural due process claim against the Individual Defendants fails to state a claim due to the availability of an adequate, post-deprivation remedy.

### B. Plaintiff's due process claim fails to specify the unconstitutional conduct she believes each defendant took.

When Plaintiff's Amended Complaint attempts to state a claim for alleged procedural due process violations, she does so in a single paragraph alleging that actions taken by "Defendants" "as described but not limited to the allegations included in this Complaint" violated her due process rights. She never identifies what specific actions taken by each Individual Defendant supposedly violate the Constitution. Especially considering that these allegations are made against the Individual Defendants in their *personal* capacities, such a failure is fatal to Plaintiff's claim.

The law is clear that Plaintiff "must allege some personal involvement by an identified official in the alleged constitutional violation to succeed under § 1983." *Flores v. City of Farmington*, 2019 WL 498354, at *3 (D.N.M. 2019) (citing *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Pahls v. Thomas*, 718 F.3d 1210, 1231-32 (10th Cir. 2013)). "In a § 1983 action, it is particularly important that a plaintiff's complaint 'make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claim against him or her." *Id.* (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original)).

Here, Plaintiff fails to identify what specific actions each of the Individual Defendants took that supposedly violated the Constitution. Instead, she grouped all of the Individual Defendants into a single allegation and claimed that their actions violate her procedural due process rights. However, "rather than grouping the actions of the Defendants together, Plaintiffs must establish that *each* defendant caused the alleged constitutional violation as to each Plaintiff. *Id.* (citing *Pahls v. Thomas*, 718 F.3d 1210, 1231-32 (10th Cir. 2013)). Plaintiff's § 1983 claim should also be dismissed on this basis alone.

### C. The Individual Defendants are entitled to qualified immunity on Plaintiff's procedural due process allegations.

Even if this Court finds that, despite the availability of the KJRA remedy and her generic allegations, Plaintiff can nevertheless assert § 1983 procedural due process claims, this Court should still dismiss Plaintiff's due process claim because the Individual Defendants are entitled to qualified immunity. Public officials are entitled to immunity unless they (1) violate a federal statutory or constitutional right, ***and*** (2) the unlawfulness of the conduct was "clearly established" at the time. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).

With respect to the first portion of the inquiry, as the Individual Defendants have already established, there is no "violation of the procedural requirements of the Due Process Clause" if the plaintiff is afforded a "meaningful postdeprivation remedy." *Hudson*, 468 U.S. at 533. Because the KJRA provides such a remedy, there is no possible constitutional violation, and the Individual Defendants are entitled to qualified immunity.

Additionally, the Individual Defendants are entitled to immunity because Plaintiff cannot possibly establish that any of the alleged constitutional violations were "clearly established." "Clearly established" means that at the time of the challenged conduct, the law was "sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*,

10

138 S.Ct. at 589 (internal quotation marks and citations omitted).  The existing law must have placed the constitutionality of the conduct "beyond debate."  *Id.*  The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018).  "[T]he clearly established law must be "particularized" to the facts of the case.  *White v. Pauly*, 137 S.Ct. 548, 552 (2017).

Here, Plaintiff's Count VII does not identify the specific constitutional violations she alleges against each Individual Defendant, and as the above cases describe, it is insufficient for Plaintiff to point to a case discussing general concepts of procedural due process.  Instead, she must point to a case from the Supreme Court of the United States or from the Tenth Circuit, which establishes that the particular facts at issue in this case constitute a constitutional violation. For example, if Plaintiff believes it was a constitutional violation for Dean Lejuez to speak with members of the CCAPT, she needs to proffer a factually similar case from one of those courts holding that it is a constitutional violation for the dean of a school to speak with members of a faculty tenure-review committee.  Yet, no such case exists.  So too for any other due process violation she alleges—because she cannot point to a factually analogous case clearly establishing that the specific challenged conduct is unconstitutional, the Individual Defendants are entitled to qualified immunity, and this claim should be dismissed.

## II. PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS

### A. Plaintiff fails to identify the deprivation of any form of protected speech.

In addition to her procedural due process allegation, Plaintiff appears to also allege a constitutional violation based on two different First Amendment theories.  Both of these theories fail, as a matter of law, to state a claim.

11

First, Plaintiff alleges that Dr. Baskett violated her "right to speak with other faculty members" serving on the review committee during the PTTR process. FAC ¶ 236. Even assuming all of Plaintiff's allegations in this respect are true, Plaintiff has no First Amendment right to engage in this type of speech. As a public employee, Plaintiff has First Amendment rights to speak as a citizen regarding matters of public concern. *See, e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Dunn v. Morse*, 2017 WL 1197649, at *4 (D. Kan. 2017). "Nevertheless, a public employer must be able to control the operations of its workplace." *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014). "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti*, 547 U.S. at 418.

Here, Plaintiff claims that she was prevented from speaking with members of the review committee during her tenure-review process, which precluded her from explaining or further discussing items in her tenure dossier file. That type of individualized personnel matter is precisely the type of speech that is unprotected by the First Amendment. "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983); *see also Isenalumhe v. McDuffie*, 697 F. Supp. 2d 367, 381 (E.D.N.Y. 2010) ("[T]he speech at issue involves a string of complaints by faculty members unhappy with the administration of their department. While the complaints may well be justified, the First Amendment does not transform a federal court into a battleground for their resolution.").

12

Defendants are aware of no case holding that the First Amendment affords a faculty member a constitutional right to speak to members of an internal tenure-review committee about the tenure review and aspects of the tenure dossier. That type of internal personnel issue or any other personal grievances are simply not protected by the First Amendment, and KU (and its employees) may freely regulate it. Accordingly, Plaintiff's claim that such regulation is a First Amendment violation should be dismissed.

Second, Plaintiff includes the generic allegation that the Individual Defendants "effectively halted [Plaintiff] from objecting to illegal practices by firing her." FAC ¶ 237. To begin, this "claim" should be summarily dismissed because it does not specify any action that any Individual Defendant took. *See supra* at 9-10.

Further, it is unclear what Plaintiff means by this allegation, because she never alleges that any of the Individual Defendants prohibited her from exercising any legal right to report discrimination, nor does she allege that any Individual Defendant prohibited her from speaking as a citizen on a matter of public concern—the only type of speech that would be constitutionally protected.

Moreover, Plaintiff has had ample ability to raise concerns about what she perceives to be illegal practices by KU. In fact, her First Amended Complaint makes clear that she raised these concerns at several points during the administrative process she received at KU. But even setting that aside, Plaintiff was able to raise all of her concerns in a KJRA proceeding (which, as discussed above, also cures any supposed procedural violation in the underlying process). Plaintiff also filed a charge of discrimination with the EEOC. And then she filed this lawsuit, raising her concerns yet again. Thus, to the extent Plaintiff is arguing that some action of the

Individual Defendants prohibited her from asserting claims of illegal activity by KU or its employees, that appears directly contrary to the procedural history of Plaintiff's claims.

In any event, Plaintiff has failed to allege that any Individual Defendant took any action to prevent any activity of Plaintiff that is even arguably protected by the First Amendment. Thus, to the extent this count is predicated on a First Amendment violation, it should be dismissed.

### B. The Individual Defendants are entitled to qualified immunity on Plaintiff's First Amendment allegations.

As discussed above, the Individual Defendants are entitled to qualified immunity unless Plaintiff can establish a constitutional violation ***and*** that the right was "clearly established." *Wesby*, 138 S. Ct. at 589. With respect to the First Amendment allegations, there is no constitutional violation because Plaintiff alleges no deprivation of constitutionally protected speech. Even if she had, Plaintiff cannot establish that such a right was clearly established in this factual context. To do so, Plaintiff may *not* rely on generalized cases stating, for example, that the right to "free speech" is clearly established; rather, she must proffer a controlling case including the factual circumstances present here—i.e., a case holding that it is a constitutional violation to prevent a faculty member from speaking with members of her tenure-review committee while the tenure review is in process. The Individual Defendants are aware of no such case, and, without one, the Individual Defendants are entitled to qualified immunity.

### CONCLUSION

This Court should grant the Individual Defendants' Motion to Dismiss.

Respectfully submitted,

/s/ Derek T. Teeter
DEREK T. TEETER        KS BAR NO. 23242
MICHAEL T. RAUPP       KS BAR NO. 25831
HUSCH BLACKWELL LLP
4801 Main St., Suite 1000
Kansas City, MO  64112
(816) 983-8000
(816) 983-8080 (FAX)
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2019, I filed the foregoing document via the Court's ECF system, which will provide notice to all counsel of record receiving electronic notice. On the same day, a paper copy was mailed via first-class, prepaid U.S. Mail and by email to:

Catherine A. Joritz, pro se
PO Box 422
Perry, KS 66073
Email: cjanimate@aol.com

/s/ Derek T. Teeter
*Attorney for Defendants*

15