**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

CATHERINE A. JORITZ,

                 Plaintiff, *pro Se*

            -vs-                       Case No. 5:17-cv-04002-SAC-KGS
                                        Honorable Judge Sam A. Crow

THE UNIVERSITY OF KANSAS,
CHANCELLOR BERNADETTE GRAY-LITTLE
(in her individual capacity as Chancellor of the
University of Kansas), DEAN CARL LEJUEZ,
(in his individual capacity as Dean of the College of
Liberal Arts & Sciences of the University of Kansas),
Professor STUART J. MACDONALD (in his individual
capacity as Chair of the Chair of the College Committee on
Appointments, Promotion and Tenure Committee
of the University of Kansas), Professor MICHAEL
BASKETT (in his individual capacity as Department Chair
of Film & Media Studies of the University of Kansas),

                 Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO INDIVIDUAL DEFENDANTS'**
**MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

     COMES NOW the Plaintiff, Catherine A. Joritz, *pro Se*, (hereafter "Professor Joritz"), and

submits her Response in Opposition to Defendant University of Kansas' (hereafter "University)

Individual Defendants' Motion to Dismiss and Memorandum in Support (hereafter "University

Individuals' MTD"). For the reasons set forth below, Professor Joritz respectfully requests that

this Court deny the University's Individual Defendants' Motion to Dismiss in its entirety.

## I.     PREFACE – VIOLATIONS OF RULES OF PROFESSIONAL CONDUCT

Professor Joritz requests that this Court take judicial notice of the false statements included (yet again) as "operative facts" (Doc 71, p.4) in the University's Document INDIVIDUAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, claiming that said operative facts were "taken from Plaintiff's First Amended Complaint". This is not true and in violation of the Rules of Professional Conduct.

> *Rule 226, Kansas Rules of Professional Conduct*
> *3.3 Advocate: Candor Toward the Tribunal*
>
> *(a) A lawyer shall not knowingly:*
> *(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;*

For the sake of clarity and for the purpose of justice, both contingent on accurate facts, Professor Joritz respectfully requests this Court note the following: As in Document No. 55, the University's Motion to Dismiss, the University agaub repeatedly **falsely** stated that Professor Joritz underwent a "tenure-review process" in their recent document, the University Individuals' MTD (Doc 71, pp. 1, 4, 12) and "tenure review" (Doc 71, p 5, 11, 14), involving a "tenure dossier file" (Doc 71, pp. 12, 13), "tenure review committee", and "tenure committee" (Doc 71, pp. 11, 13, 14). As stated in Professor Joritz' original and first Amended Complaint: The major performance evaluations referred to in this case are Progress **Toward** Tenure Reviews ("PTTR"), i.e. **PRE-tenure** reviews. Professor Joritz' Amended Complaint states this clearly [Doc 49, p. 39, *Id.* ¶143]:

> *143.     Professor Joritz's employment was terminated based on a pre-tenure review. The standards for pre-tenure should demonstrate "progress toward tenure", not the fulfillment of tenure requirements.*

The distinction between a pre-tenure review and a tenure review is an important one. A pre-

tenure review occurs when a tenure-track faculty member is still early in their University career, at approximately the third or fourth year, which is several years prior to a tenure review. A pre-tenure review differs procedurally from a tenure review – it is neither as exhaustive nor rigorous as a tenure review, there are no external reviewers involved, and more. The standards of review differ accordingly: A pre-tenure review seeks only to determine if a faculty member **demonstrates "progress** toward tenure", not whether a faculty member's achievements **warrant** tenure.

## II.    NATURE OF THE CASE

Professor Joritz, a female, was employed as a tenure-track Assistant Professor at the University of Kansas (hereafter "University") in the Film & Media Studies Department, a part of the University's College of Liberal Arts & Sciences (hereafter "CLAS") for a total of 5 years, beginning in August 2012. Based upon arbitrary, capricious, and discriminatory determinations, Professor Joritz' appointment as a tenure-track Assistant Professor was wrongfully terminated by the University on May 13, 2016, after her fourth year. The University informed her that her employment would end the following year on May 16, 2017. Consequently, on January 6, 2017, Professor Joritz filed the instant action against the University. On November 13, 2018, Professor Joritz filed her first Amended Complaint, adding the individual Defendants Michael Baskett, Stuart J. MacDonald, Carl Lejuez, and Bernadette Gray-Little (hereafter "Defendants" or "University Defendants", when referred to as a group).

The University and Defendants, in opposition to the University's published protocols, deprived Professor Joritz of a pre-tenure evaluation process free from arbitrary and capricious decisions, thereby violating her due process rights. Prior to Professor Joritz' termination, the University's Faculty Rights Board ("FRB") reviewed an appeal from Professor Joritz and found that University Defendants Michael Baskett ("Department Chair of Film & Media Studies"), Stuart

MacDonald ("Chair of the "College Committee on Appointments, Promotion and Tenure Committee", also "CCAPT"), and Carl Lejuez ("interim Dean of College of Liberal Arts & Sciences, "CLAS") all *"relied on factually inaccurate information in their review of Professor Joritz' progress toward tenure".* (Defendant Stuart Macdonald **literally fabricated misinformation**, see Amended Complaint, Doc 49, p. 31, ¶116.)

In a letter addressed to University Defendant Gray-Little[1], the University's Faculty Rights Board declared that statements written by Defendant Michael Baskett in his Progress Toward Tenure Review (hereafter "PTT Review" or "PTTR") evaluation letter to the College Committee on Appointments, Promotion and Tenure Committee ("CCAPT"), specific to Professor Joritz' German-related research record, were *"not correct",* and that (Doc 49, EXHIBIT F):

> *"These statements were then repeated in CCAPT's recommendation and likely influenced Dean Lejuez's conclusion that the status of Professor Joritz's proposed book on Lotte Reiniger was unclear."*

And

> *"...FRB recommends that they be disregarded in your independent judgement of the record. Also, the Dean and CCAPT's mistaken reliance on this inaccurate information should be taken into account when weighing their respective recommendations regarding Profeossor Joritz's research record."*

The University Faculty Rights Board, in their letter to then-University Chancellor Gray-Little, recommended that she NOT RELY ON the "inaccurate information" written by Defendant Baskett, and "repeated" by Defendants MacDonald and Lejuez:

> *"We believe this inaccurate information should not be relied upon in your deliberations so that Professor Joritz' rights in the PTTR process are adequately protected."*

The University's Faculty Rights Board pointed clearly to the adverse employment actions

---

[1] *See* Exhibit F of Amended Complaint

by Defendants Lejuez and MacDonald (their recommendations for the termination of Professor Joritz' employment amidst "inaccurate information", "a lack of independent judgement of the candidate's record", etc), advising Defendant Gray-Little:

> *"...the Dean and CCAPT's mistaken reliance on this inaccurate information should be taken into account when weighing their respective recommendations regarding Professor Joritz's research record."*

Even after the University Faculty Rights Board findings, University Defendant Gray-Little continued the University's unlawful pattern and practice of discrimination by repeating that Professor Joritz' "research record demonstrated insufficient progress toward tenure" as a pretext for terminating Professor Joritz' employment. Defendant Gray-Little provided no justification for her "finding".

With this case Professor Joritz alleges violations of Title VII of the Civil Rights Act of 1964 as codified under the 42 U.S.C. § 2000e, *et seq.,* and violations of the 1st, 5th and 14th United States Constitutional Amendments. This legal action seeks multiple forms of relief including, but not limited to, monetary and punitive damages, injunctive, declaratory and equitable relief against the University and Defendants for committing acts under color of law, with the intent and purpose of depriving Professor Joritz of rights secured under the Constitution and laws of the United States; for wrongfully discriminating against Professor Joritz on the basis of national origin and sex/gender; for arbitrarily and capriciously denying Professor Joritz of property and liberty interests; for retaliating against Professor Joritz for her exercise of constitutionally protected speech; for subjecting Professor Joritz to a hostile work environment and for refusing or neglecting to prevent such deprivations and denials to Professor Joritz.

As a direct and proximate result of the University's pattern and practice of discrimination and retaliation, which the University and Defendants Baskett, MacDonald, Lejuez, and Gray-Little

perpetuated, Professor Joritz suffered and will continue to suffer severe and substantial damages, including lost wages and raises, lost research opportunities, lost research funding, diminished earnings capacity, lost benefits and lost career opportunities. Plaintiff also suffered and will continue to suffer loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, stress and distress.

On December 11, 2018, the University filed the instant Motion to Dismiss Professor Joritz' Amended Complaint, arguing that *res judicata* bars all of Professor Joritz' claims against the University*,* that the University is immune from Professor Joritz' breach of contract claim under the Eleventh Amendment and that Professor Joritz' claims for discrimination under Title VII fail to state a claim. Professor Joritz objected to the University's motion in its entirety, with the exception of the COUNT VI "breach of contract" claim, which Professor Joritz requested, per Motion, that this Court to permit her to withdraw and order dismissed without prejudice.

On February 22, 2019, the University filed "INDIVIDUAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT", which Professor Joritz opposes with this Response.

### III.    STANDARD OF REVIEW – MOTION TO DISMISS

The standard of review for a motion to dismiss can be *de novo* or discretionary, depending on the circumstances. "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232-33 (5th Cir. 2009). A court must accept as true "all well-pleaded factual allegations in the complaint as true and view(s) them in the light most favorable to the plaintiff".[2]

---

[2] *Burnett*, 706 F.3d at 1235.

When reviewing a motion to dismiss filed pursuant to K.S.A. 60-212(b)(6), "...a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom." *Grindsted Products, Inc.* v. *Kansas Corp. Corn 'n.,* 262 Ran. 294, 303, 937 P2d 1,7(1997). "Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.' *Id.* at 302. *See also Miller* v. *Sloan, Listrom, Eisenbarth, Sloan and Glassman,* 267 Ran. 245, 978 P.2d 922 (1999).

Additionally, the motion to dismiss must be denied "unless the allegations in the petition, viewed in the most favorable light to the plaintiff, clearly demonstrate the plaintiff is not entitled to relief under any set of facts which could be proved in support of the claim." *Palmer v. Brown,* 242 Kan, 893, 895, 752 P.2d 685, 687(1988). *See also Sampel v. Balbernie,* 20 K.A.2d 527, 889 P.2d 804 (1995) (Kansas Court of Appeals held every doubt is to be resolved in plaintiff's favor).

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *"Pro se* actions are held to a less stringent standard of review and that sua sponte dismissals are generally disfavored by the courts…"[3] and "when the "plaintiff is proceeding pro se, we must construe [her] pleadings liberally," applying a less stringent standard than is applicable to pleadings filed by lawyers."[4] *Gagan v. Norton,* 35 F.3d 1473, 1474 n. 1 (10th Cir.1994).

## IV.   ARGUMENTS AND AUTHORITIES

In the University's Individuals' MTD (Doc 71), the University presented numbered and lettered arguments, all of which are addressed in turn, using the numbers/letters that correspond to

---

[3] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir.1997).

[4] *Ibid.*

the University's arguments, below.

**I.A.** The University contends that Professor Joritz is "prohibited from asserting a § 1983 claim" based on due process because Professor Joritz' concurrent Kansas Judicial Review Act case ("KJRA") provides an "adequate form of post-deprivation review" and holds that the "KJRA procedure provides Plaintiff with the ability to challenge all aspects of the process…" "…and decision *(sic)* she believes improper". (Doc 71, pp. 3, 6-9) The University further claims, "…the mere *availability* of the KJRA remedy precludes any procedural due process claim that Plaintiff makes in this case."

These assertions are incorrect. First, state law cannot and does not impair or eliminate any federal claim. Further, K.S.A. Chapter 77-621 *Scope of Review*, makes clear that the scope of a KJRA is much narrower than Professor Joritz' federal claims. Chapter 77 is limited to: (a)(1) "…proving the invalidity of agency action". Chapter 77's limited scope does NOT provide Plaintiff "with the ability to challenge all aspects of the process".

Additionally, Chapter 77 does not allow for suing individuals, which is the matter at hand. It challenges only agency action(s). The scope of Chapter 77 does not provide for a substantial due process hearing; It allows only for a review of the documentary record, most of which is prepared by the University.

In court, the cases will proceed quite differently: The KJRA case will likely be a bench trial rather than a trial with a jury of peers. Whether Professor Joritz will be allowed discovery in the KJRA case has not yet been ruled on. However, discovery – if permitted at all – will be limited in scope to its relevancy in "…proving the invalidity of agency action". The essence of due process is the right to confront one's accusers – denied or limited discovery does not provide for substantial due process as a whole and denies Professor Joritz the right to confront the University's Individual

Defendants, all of whom knowingly and willingly denied Professor Joritz her Constitutional and other rights, advocated for the termination of her employment, and committed other unlawful and erroneous acts as described herein and in Professor Joritz' previous pleadings.

After receiving the right to sue letter from the EEOC, Professor Joritz' Section 1983 claims were properly brought before this Court. On p. 3 of her Amended Complaint, Professor Joritz clearly laid out the reasons why jurisdiction for her claims lies with this Court:

> 4. This case arises under the United States Constitution, 42 U.S.C. Sections 1983 and 1988, as amended, 42 U.S.C. section 2000e *et seq.*. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1343.

> 6. This Court has supplemental jurisdiction over any and all state law claims alleged in this case pursuant to 28 U.S.C. Section 1367(a), as they form part of the same case or controversy under Article III of the United States Constitution.

Chapter 77 ("KJRA") does not "provide Plaintiff with the ability to challenge all aspects of the process" for other reasons as well: Professor Joritz' claims, which include § 1983 constitutional claims against the individual University Defendants in their personal capacities, including the 1st, 5th, and 14th Amendments, discrimination based on country of origin, discrimination based on sex, hostile work environment, and retaliation, resulting in Professor Joritz' termination, all lie outside the scope of the KJRA. As way of example, when plaintiff Rachel Platt sought relief for retaliatory discharge, *Platt v. Kansas State University, 379 P. 3d 362 - Kan: Supreme Court 2016,* K-State argued that Platt's claims were governed by the KJRA. The Kansas Supreme Court found otherwise, recognizing:

> "4. The nature of a claim is determined from the pleadings and from the real nature and substance of the facts alleged therein.

> 5. The Kansas Judicial Review Act, K.S.A. 77-601 *et seq.* (KJRA), does not apply to the civil tort of retaliatory discharge against an administrative agency."

And at *372*[5]:

> "In short, based on the caselaw *(sic)* cited, the KJRA does not govern a challenge to an agency action that claims retaliatory discharge from employment."

Finally, while reinstatement is a possibility, the KJRA case cannot grant the same restitution that may result from this case. For all these reasons, the KJRA case does not provide Professor Joritz adequate post-deprivation remedies. The University Individuals' MTD should be denied and this case should be permitted to move forward.

**I.B**. The University contends that, "Plaintiff's due process claim fails to specify the unconstitutional conduct she believes each defendant took." and "she grouped all of the Individual Defendants into a single allegation and claimed that their actions violate her procedural due process rights." (Doc 71, pp. 9-10)

The University is incorrect. Throughout her Amended Complaint, Professor Joritz outlined in detail many such violations, including ongoing discrimination, retaliation and more, despite the fact that discovery has not yet begun. On p. 5 Professor Joritz cited the Individual Defendants' participation in her termination: "15. At all times material to this Complaint, individual Defendants BERNADETTE GRAY-LITTLE, CARL LEJUEZ, STUART J. MACDONALD and MICHAEL BASKETT were employed by the University and were residents of Kansas. Each of these Defendants approved, facilitated, and/or voted for Professor Joritz's non-reappointment/ termination."

On p.6 Professor Joritz lists Count III of her claim as "COUNT III – TITLE VII – Title 42 United States Code § 2000e-3 RETALIATION FOR OPPOSING UNLAWFUL EMPLOYMENT

---

[5]https://scholar.google.com/scholar_case?case=14057147134151041231&q=%22kansas+state+university %22&hl=en&as_sdt=4,184&as_ylo=2015

PRACTICES".

On p.63 Professor Joritz tied her termination to her Constitutional Claims and to unlawful retaliation: "237. Defendants effectively halted Professor Joritz from objecting to illegal practices by firing her." On pp. 47-59, Professor Joritz outlined how the concerted efforts of the above-named University's Individual Defendants contributed to and resulted in her termination.

On pp. 55-56, ¶¶202-203 Professor Joritz related how only two weeks of her having reported discrimination to Defendant Lejuez, he recommended she be fired, even referencing her complaints of discrimination in his letter:

> It is notable that during the PTTR process, you raised a number of concerns with me (and several others), including that prejudicial statements were included in the departmental review.

On September 11, 2018, the Honorable Magistrate Gary Sebelius recognized the Individual Defendants' unconstitutional conduct in his REPORT AND RECOMMENDATION, (Doc 43, pp. 9-10), submitted to the Honorable Judge Crow (excerpt, emphasis added):

> Defendants Drs. Gray-Little, Lejuez and Macdonald next contend that plaintiff has failed to state a claim against them under the First Amendment.[35] They argue that plaintiff has failed to allege how they violated her First Amendment rights. Defendants have offered little to support this contention. Defendants have failed to point to any allegations of the amended complaint. **The court notes that plaintiff has asserted that "[d]efendants effectively halted [her] from objecting to illegal practices by firing her." This allegation, coupled with the factual contentions contained in the amended complaint, are sufficient to avoid dismissal of the First Amendment claims against these defendants.**

On October 9, 2018, the Honorable Judge Crow agreed with Judge Sebelius' "recommended disposition of (Professor Joritz') motion to amend" (Doc 44).

**I.C.**  The University contends "The Individual Defendants are entitled to qualified immunity on Plaintiff's procedural due process allegations.", again referring to *Hudson,* 468 U.S. at 533, and again claiming, "there is no "violation of the procedural requirements of the Due Process Clause" if the plaintiff is afforded a "meaningful postdeprivation *(sic)* remedy."" (*See* Doc 71, p. 8) Because arguments proving the LACK of "meaningful post-deprivation remedy" have been provided previously (*See* **I.A.**, beginning p.8), it serves no purpose here to "beat a dead horse".

Qualified immunity does not apply to the individual University Defendants. Qualified immunity only shields government officials "from liability for *civil damages* **insofar as their conduct does not violate clearly established statutory or constitutional rights**."[6] Significantly, a qualified immunity defense does not apply to injunctive relief.[7] When, as here, there is **an unreasonable violation of a clearly established constitutional right,** the doctrine of qualified immunity is inapplicable.[8]

For all these reasons, the University's Individual Defendants' Motion to Dismiss should be denied and this case allowed to proceed.

**II.A.**  On page 3 the University contends that, "With respect to the First Amendment allegations, Plaintiff fails to allege that the Individual Defendants took any action to constrain any type of protected speech." The University repeats this claim with varied language on pp. 11-13:

"Plaintiff fails to identify the deprivation of any form of protected speech."

And

"she never alleges that any of the Individual Defendants prohibited her from exercising any legal right to report discrimination, nor does she allege that any

---

[6] Id. at 672 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)) (emphasis added).
[7] See *Wood v. Strickland,* 420 U.S. 308, 308, 95 S. Ct. 992, 994, 43 L. Ed. 2d 214 (1975).
[8] See generally *Wallace v. Cty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).

Individual Defendant prohibited her from speaking as a citizen on a matter of public concern – the only type of speech that would be constitutionally protected."

And

"Plaintiff includes the generic allegation that the Individual Defendants "effectively halted [Plaintiff] from objecting to illegal practices by firing her." FAC ¶ 237. To begin, this "claim" should be summarily dismissed because it does not specify any action that any Individual Defendant took."

The University cites *Isenalumhe v. McDuffie*, 697 F. Supp. 2d 367, 381 (E.D.N.Y. 2010) and *Connick v. Myers*, 461 U.S. 138, 147 (1983) as case law supporting their claim. However, neither case defends the University's motion to dismiss in the way the University has sought to apply them. In *Isenalumhe v. McDuffie,* Senior District Judge Frederic Block concluded that "that plaintiffs either did not speak as citizens or did not speak on matters of public concern" (excerpt):

*Plaintiffs make no effort to attribute particular instances of retaliation to particular *374 instances of protected speech. Instead, they contend that their allegedly protected speech, taken as a whole, led to a retaliatory hostile work environment consisting of numerous retaliatory actions.*

This is not the case here. As way of example, on pages 47 – 59 of her Amended complaint (Doc 49), Professor Joritz clearly laid out the retaliation she faced because she "because she opposed illegal practices and complained about discrimination based on national origin and sex/gender.", i.e. protected speech. On page 63, Professor Joritz logically asserted, "237. Defendants effectively halted Professor Joritz from objecting to illegal practices by firing her." Discrimination is always a matter of public concern, especially at a federally funded State University that is tasked with educating the leaders and workforce of tomorrow, and expected to obey laws.

By citing *Connick v. Myers, Trant v Oklahoma* and other case law, the University attempts to categorize the University's denial of Professor Joritz' rights to speak and associate with the faculty members on the PTT Review Committee as permitted employment practice and as a matter

of (Professor Joritz') personal interest.

However, in her Amended Complaint, Professor Joritz demonstrates how the University again and again, muzzled and isolated her as means of retaliating against her and denying her due process during her PTT Review, an evaluation on which her employment depended (Doc 49, p. 33, ¶120, p. 51, ¶ 188, p. 41 ¶149-150, pp 47 – 59) in order to get her fired. One can also logically conclude that by refusing Professor Joritz contact with her fellow faculty members, the University also effectively prevented Professor Joritz from discussing her concerns regarding discrimination with them.

Even if reporting discrimination was not considered Constitutionally protected speech, (which it is), Professor Joritz' Amended complaint demonstrates how she suggested ways to *address the issue of discrimination by students, against faculty*, and *increase (students') awareness of federal laws regarding discrimination and better prepare them for future employment"*, i.e. expressed "matters of legitimate public concern", multiple times to various University faculty and administrators:

See Amended Complaint, Doc 49, pp. 11-12, ¶45, excerpt, emphasis added:

> *At various times Professor Joritz met with the following faculty members to discuss the discrimination and relate her concerns: Department Chair Professor Tamara Falicov, Department Chair Professor Michael Baskett (Falicov's successor), members of the Faculty Evaluation Committee consisting of Professors Jacobson, Preston and Wilmott, University administrators including the College of Liberal Arts Dean Carl Lejuez, Associate Dean Henry Bial and Chancellor Bernadette Gray-Little. Professor Joritz requested that the discriminatory comments be removed from her record **and suggested ways to address the issue of student discrimination against faculty in the future, specifically in student evaluations. Professor Joritz had been made aware by other women faculty that they too, experienced discrimination via anonymous, end-of-semester student evaluation evaluations. One female professor related to Professor***

*Joritz how a student had called her a "New York bitch".*

See Amended Complaint, Doc 49, p. 48, ¶179, excerpt, emphasis added:

*None of these University administrators took action to address or prevent the discrimination Professor Joritz reported, **even though Professor Joritz had provided the Dean** (Defendant Lejuez) **and Chancellor** (Defendant Gray-Little) **with effective ideas for doing so.** Instead, they all facilitated and approved Professor Joritz's non-reappointment/termination of her employment.*

See Amended Complaint, Doc 49, p. 57, ¶208, excerpt, emphasis added:

*206. **Professor Joritz finished her meeting with the Chancellor by explaining in detail how students were abusing the faculty evaluation process to write discriminatory comments in the student evaluations, and how that abuse became a permanent part of faculty records, as occurred in Professor Joritz's case. Professor Joritz also offered a solution to ending discriminatory comments in student evaluations, which could be based on EEOC standards**. The Chancellor again informed Professor Joritz that she (the Chancellor) could not comment.*

See Amended complaint, Doc 49, p. 54, ¶198:

*198. That same day, 03.24.16, Professor Joritz wrote a follow-up letter to Dean Lejuez, specifically reiterating concerns she had raised during their meeting, including additional concerns These included, among other issues, discrimination by both students and faculty based on her country of origin **and ideas she had proposed to Dean Lejuez that "would increase (students') awareness of federal laws regarding discrimination and better prepare them for future employment."***

On p. 13 of its Individuals' MTD (Doc 71) the University claims:

*"she never alleges that any of the Individual Defendants prohibited her from exercising any legal right to report discrimination, nor does she allege that any Individual Defendant prohibited her from speaking as a citizen on a matter of public concern—the only type of speech that would be constitutionally protected."*

The fact that Professor Joritz' Amended Complaint repeatedly describes how her allegations of discrimination were ignored, and were neither reported nor addressed by University personnel (*see*, for example, Doc 49, p. 13, ¶48, pp 43-45, ¶¶156 - 165) calls to mind the question:

"If a tree falls in a forest and no one is around to hear it, does it make a sound?"

Even when Professor Joritz was permitted to speak to others about the discrimination she and others faced, she was, in effect, silenced. Her "right to report discrimination" was worthless window dressing. No one at the University addressed her complaints in any way even though her complaints also included discrimination that was occurring not only to her but across campus to other faculty. Although reporting was mandated, only once (to her knowledge) were her complaints reported to the University's Office of Institutional Opportunity and Access (IOA)(see ¶48); Nothing changed (Doc 49, ¶105 – 107). When Professor Joritz approached the IOA, she was either turned away (See Doc 49, pp 21-22, ¶80, p. 29, ¶106, p 48, ¶178) and/or the IOA refused to investigate her complaints. When the University/individual University Defendants fired Joritz, they stopped her complaints once and for all.

Although not explicitly argued in her Amended Complaint, one can infer that the reason the University denied Professor Joritz access to documents such as Defendant Michael Baskett's PTT Review evaluation letter, Stuart Macdonald's PTT review evaluation letter (initially), the CCAPT notes regarding Professor Joritz's PTT Review evaluation (never received), and the Film & Media Studies Departmental 2015 PTTR Initial Review (p.34, ¶123, p 53, ¶¶193-194), was to hide the defamatory and false statements made about her alleged "behavior", her German-related research and the omissions of her German-related accomplishments. By refusing Professor Joritz proof of the sexist allegations about her "behavior" (a non-existent criteria), the discriminatory attacks on her German-related research and the omissions of her German-related research accomplishments,

the University, including the individual Defendants, prevented Professor Joritz from reporting and/or combatting the discrimination. In short, Professor Joritz was denied her freedoms by denying her the information that would enable her to exercise those Constitutional rights.

**II.B** The University contends that "the Individual Defendants are entitled to qualified immunity on Plaintiff's First Amendment allegations."

Using its discretion in ordering its analysis on the issue of qualified immunity, a court must ultimately evaluate whether the facts alleged make out a constitutional right and whether that constitutional right was "clearly established" at the time of the alleged misconduct.[9] This Court has already done so (*see* Magistrate Sebelius' recommendation above, **I.B),** with the Honorable Judge Crow concurring).

Again, when, as demonstrated here, there is an unreasonable violation of a clearly established constitutional right, the doctrine of qualified immunity is inapplicable.[10] (See **I.B, I.C, II.A,)**

For all the reasons above, the University's Individual Defendants' Motion to Dismiss should be denied and this case allowed to proceed.

## V.   CONCLUSION

The University, through its Individual Defendants' Motion to Dismiss, has attempted to convince this Court to dismiss Professor Joritz' complaint against the individually named parties in this case. Professor Joritz has clearly set forth in her Amended Complaint, in this Response, and

---

[9] See *Hernandez v. United States*, 785 F.3d 117, 120 (5th Cir. 2015) (quoting Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (overruling Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001))).

[10] See generally *Wallace v. Cty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005).

in her previous pleadings, ample facts, cause and legal basis to permit this case to move forward. It is reasonable to believe that discovery will turn up additional evidence that supports and clarifies Professor Joritz's allegations.

Professor Joritz respectfully requests that the Court note that the University, in both its Motions to Dismiss Memorandums (Docs 55 & 71), submitted skewed, inaccurate narratives and included as facts, statements that are patently false.

It is in the interest of justice to grant Professor Joritz the chance to conduct discovery, the opportunity to further develop and prove her case and to have her "day in court".

WHEREFORE, for the foregoing reasons, Professor Joritz respectfully requests that the Court deny the University's Individual Defendants' Motion to Dismiss in its entirety and grant such further relief as may deem just and proper.

DATED: March 15, 2019

Respectfully submitted,

Catherine A. Joritz, *pro Se*
PO Box 422
Perry, KS 66073
T: (630) 857-8907
E: cjanimate@aol.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CATHERINE A. JORITZ,
                        Plaintiff, *pro Se*

              -vs-                                        Case No. 5:17-cv-04002-SAC-KGS

THE UNIVERSITY OF KANSAS, *et al*.
                        Defendant.

**NOTICE**

TO: Derek Teeter and Michael Raupp, *Attorneys for Respondent University of Kansas*

You are hereby notified that Cathy Joritz, *pro Se*, did on March 15, 2019 cause to be filed with the Court per email:

**PLAINTIFF'S RESPONSE IN OPPOSITION TO INDIVIDUAL DEFENDANTS'
MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

You have been emailed a copy of this motion on March 15, 2019 to

Derek T. Teeter derek.teeter@huschblackwell.com
Michael T. Raupp michael.raupp@huschblackwell.com

and copies have been sent on March 16, 2019 a copy via postage pre-paid U.S. Mail, upon:

• DEREK T. TEETER / MICHAEL T. RAUPP *Attorneys for the University of Kansas*
  HUSCH BLACKWELL LLP,  4801 Main, Suite 1000, Kansas City, Missouri 64112
• BERNADETTE GRAY-LITTLE, 229 Weaver Rd.,  Chapel Hill, NC, 27514
• CARL W. LEJUEZ, University of Kansas, 1450 Jayhawk Blvd., Strong Hall, Room 250,
     Lawrence, KS, 66045
• STUART J. MACDONALD, 1201 W. 22nd Terrace, Lawrence, KS 66046-2853
• MICHAEL BASKETT, 935 Rockledge Rd, Lawrence, KS 66049-2636

                                        Respectfully Submitted,

                                        Cathy Joritz, *pro Se*

              PO Box 422, Perry, KS 66073, cjanimate@aol.com, (630) 857-8907

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CATHERINE A. JORITZ,

                Plaintiff, *pro Se*

          -vs-                            Case No. 5:17-cv-04002-SAC-KGS

THE UNIVERSITY OF KANSAS, *et al.*

                  Defendants.

## CERTIFICATE OF SERVICE

The undersigned Plaintiff, *pro Se*, certifies that a true and correct copy of the foregoing was filed with the Court via email on the March 15, 2019, and that on March 15, 2019, sent via email to

Derek T. Teeter derek.teeter@huschblackwell.com
Michael T. Raupp michael.raupp@huschblackwell.com

A paper copy was also served on March 16, 2019 via first-class, prepaid U.S. Mail upon:

• DEREK T. TEETER / MICHAEL T. RAUPP *Attorneys for the University of Kansas*
  HUSCH BLACKWELL LLP,  4801 Main, Suite 1000, Kansas City, Missouri 64112
• BERNADETTE GRAY-LITTLE, 229 Weaver Rd.,  Chapel Hill, NC, 27514
• CARL W. LEJUEZ, University of Kansas, 1450 Jayhawk Blvd., Strong Hall, Room 250,
    Lawrence, KS, 66045
• STUART J. MACDONALD, 1201 W. 22nd Terrace, Lawrence, KS 66046-2853
• MICHAEL BASKETT, 935 Rockledge Rd, Lawrence, KS 66049-2636

                        /s Catherine A. Joritz, *pro Se*
                        PO Box 422
                        Perry, KS 66073
                        cjanimate@aol.com
                        (630) 857-8907