IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CATHERNE A. JORITZ,

                    Plaintiff,

vs.                                    Case No. 17-4002-SAC-JPO

UNIVERSITY OF KANSAS, et al.,

                    Defendants.


**MEMORANDUM AND ORDER**

    This case is before the court upon motions to dismiss
plaintiff's <u>pro se</u> amended complaint.  The motions are made on
behalf of the defendant University of Kansas (Doc. No. 54) and the
individual defendants (Doc. No. 70).  Plaintiff's motion to
withdraw and dismiss her breach of contract claim (Doc. No. 66) is
also before the court.  The individual defendants are:  Bernadette
Gray-Little, a former chancellor at KU; Carl Lejuez, a former Dean
of the College of Liberal Arts and Sciences (CLAS); Stuart
Macdonald, a former Chair of the College Committee on Appointments,
Promotion and Tenure (CCAPT); and Michael Baskett, Chair of the
Film and Media Studies Department.  The University's motion to
dismiss is brought pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).
The individual defendants' motion to dismiss is brought pursuant
to Fed.R.Civ.P. 12(b)(6).

1

# I. PLAINTIFF'S LEGAL CLAIMS

The amended complaint ("AC")(Doc. No. 49) asserts five Title VII claims against the defendant University. Count I alleges national origin discrimination. Count II alleges sex discrimination. Count III alleges retaliation. Count IV alleges hostile work environment. Count V alleges wrongful termination. "Count VII" (which is before "Count VI" in the amended complaint) alleges due process and First Amendment constitutional violations under 42 U.S.C. § 1983 against the individual defendants. "Count VI" alleges breach of contract claims against the defendant University.

# II. ALLEGATIONS IN THE AMENDED COMPLAINT AND EXHIBITS

Plaintiff makes the following factual allegations in the amended complaint and attached exhibits. Plaintiff is an animator and educator who was an assistant professor at the KU Department of Film & Media Studies in the School of Arts from 2012 to 2017. She is an American citizen. She is fluent in German and lived and worked in Germany for more than 30 years before starting at KU.

Plaintiff was a tenure-track professor who received good or very good ratings and merit pay increases during her first two years at KU. She asserts that: she received an award for her work as an academic advisor; she was an active member of her department; she received national and international recognition

for her creative work; and she was awarded three competitive University grants and other University funding for her research.

In the Spring semester of 2014, plaintiff taught a Basic Video Production course. Some of her student evaluations included "angry, aggressive, anti-German comments" which criticized plaintiff, even calling for her to be fired. AC ¶ 43. Plaintiff alleges that these comments were made part of her permanent performance record, indicated a hostile work environment, and tainted all further evaluations. Plaintiff made requests that the comments be removed to the individual defendants (except Macdonald) and others. Plaintiff alleges that despite a duty to report "discrimination", none of the individual defendants acted upon plaintiff's concerns.

In December/January 2014-2015, preparation took place for plaintiff's first Progress Toward Tenure Review (PTTR), where a departmental committee conducts an initial review of a tenure-track professor's progress as measured by certain criteria. Plaintiff was informed via a letter on March 16, 2015 that: "improvement is required for continued progress towards tenure"; that she must submit to another review in 2015-2016; and that failing that review would result in "non-reappointment", i.e., termination. AC ¶ 55.

The first PTTR stated that, for promotion to an associate professor's position, plaintiff should increase her service

commitments on a national and international level. Plaintiff asserts this was contrary to the Promotion and Tenure Procedures set forth by the Film and Media Studies Department. According to plaintiff there were other procedural and policy violations in the evaluation. This included adding a "long form animation works" expectation which created misleading and unobtainable research expectations in the minds of committee members and administrators unfamiliar with animation production, guaranteeing that plaintiff's creative work would fall short of their expectations.

AC ¶ 67. The evaluation also contained the following statement:

> Some of the student observations may also be due to the fact that she taught extensively in Germany for many years before teaching at KU, and she has had some difficulty in adjusting her communicative and teaching skills to her new teaching environment and culture.

AC ¶ 69. Plaintiff alleges this statement placed unfair blame upon plaintiff and failed to acknowledge the positive contributions plaintiff made because of her background.

Plaintiff alleges that there was no means to appeal the PTTR decision (denying plaintiff due process) and that the review made it impossible for any subsequent reviewer to make a fair and valid evaluation of plaintiff. None of the individual defendants are alleged to have been responsible for the first PTTR review.

Plaintiff alleges that prior to her second PTTR, on January 14, 2016, she was awarded a highly competitive Hall Center for the Humanities Creative Fellowship. This was a first for a KU Film

and Media Studies faculty member.  Plaintiff alleges that this and other achievements were ignored, misrepresented or improperly considered by the individual defendants during her second PTTR review.

Plaintiff claims that defendant Baskett, the department chair in November 2015 and beyond, refused to allow plaintiff to see the report of his observation of plaintiff's classroom performance prior to the second PTTR review, in violation of University policy and prior practice.  She asserts this led to a hostile work environment.  She further claims that defendant Baskett denied her an opportunity to have a semester off from teaching in Spring 2016 to concentrate on research, although similarly situated professors were given such an opportunity.

Plaintiff alleges that the process for the second PTTR review was muddled and violated University procedures.  One of the violations was that defendant Baskett served as the PTTR Committee chairman.  This was corrected, however, on or about January 26, 2016, after plaintiff had a meeting with the Interim Dean and Associate Dean of CLAS and provided a list of alleged PTTR violations.  AC ¶ 96.  The impropriety was noted by the University Faculty Rights Board in a letter to defendant Gray-Little dated May 11, 2016.  The letter noted that the violation was especially pertinent where the department chair did not concur with the committee evaluation.  AC ¶ 85.

Plaintiff asked that the former chair of the department who had served as chair on the first PTTR committee be recused from serving on the second PTTR committee. This was denied by defendant Baskett. She claims that she was denied direct access to committee members by defendant Baskett, contrary to usual practice and policy, and was ordered instead to communicate exclusively through Baskett or his assistant.

The day after plaintiff's meeting with the interim dean and associate dean of CLAS, defendant Baskett told plaintiff: "You're not doing yourself any favors by making the department look (bad)!" AC ¶ 98. In early February, when plaintiff asked if a prior procedure would be followed in forwarding her dossier to CLAS, she alleges that defendant Baskett replied in a hostile manner that plaintiff should not assume she knows everything. AC ¶ 102.

Plaintiff notified defendant Lejuez that one of plaintiff's animated shorts was accepted by a German short film festival. She claims that he ignored this achievement when he determined that her research indicated serious deficits. AC ¶ 103.

On April 2, 2016, plaintiff emailed an Associate Dean regarding sex and national origin discrimination, including what she had experienced. She stated she had not seen these issues addressed. The Associate Dean replied on April 5, 2016 that he had referred the matter to the Office of Institutional Opportunity and Access for review.

The second PTTR Committee recommended finding that plaintiff had made satisfactory progress toward tenure. See Doc. No. 49-2, Ex. G and Ex. L. The CCAPT Committee, however, disagreed with this suggestion and on April 7, 2016 recommended plaintiff's termination in a letter from defendant Macdonald to defendant Lejeuz. Id. On April 8, 2016, plaintiff received a letter from defendant Lejeuz stating that he was recommending her termination to the Provost. The letter repeated comments from the CCAPT Committee including the conclusion that plaintiff's research record indicated serious deficits. Plaintiff claims this charge is unsubstantiated and that Lejeuz ignored the positive review of plaintiff's research made by the 2015/2016 PTTR Committee members. Plaintiff asserts that Lejeuz relied upon a letter written by defendant Baskett which made unsubstantiated allegations regarding inappropriate behavior and said that it weakened her service record. Plaintiff claims this ignored multiple examples of service and was contrary to policy and procedure. Plaintiff asserts that she was unaware of Baskett's letter until she received the Lejeuz letter.

Plaintiff claims that defendant Baskett refused her request for a copy of the letter and other documents, as did the executive assistant to the Dean. She emailed defendant Lejeuz with questions about his April 8, 2016 letter and asked him to justify using "behavior" as a PTTR evaluation standard. She also asked him for

7

documents. Defendant Lejuez refused to provide the documents and instructed plaintiff to direct her questions to the Vice Provost. Plaintiff claims her request for details regarding any alleged complaints about inappropriate behavior were stonewalled by University personnel and administrators, including the Vice Provost.

The Vice Provost provided plaintiff a copy of the April 7, 2016 letter from the CCAPT chairperson, defendant Macdonald, to defendant Lejuez. The letter is very similar to the letter plaintiff received from Lejuez and suffers from the same flaws in plaintiff's opinion.

Plaintiff further alleges that defendant Lejuez wrongly directed or influenced the deliberations of the CCAPT Committee by encouraging it to focus on plaintiff's existing record and documented evidence of progress toward completion of her proposed book.

The Lejuez letter indicates some aspects of plaintiff's input into the pre-tenure review process. The letter states that plaintiff:

> raised a number of concerns with me (and several others), including that prejudicial statements were included in the departmental review. I note that the departmental committee gave you a favorable recommendation. In addition, CCAPT did not have access to any information that stemmed from issues you raised and the faculty member you identified as biased was recused from the discussion at CCAPT so that the individual could not impact the CCAPT review.

Doc. No. 49-2, Ex. L.

Provost Sara Rosen was the next person to consider plaintiff's termination. On April 13, 2016, plaintiff asked for a meeting with Rosen, but was told by the Vice Provost that it was not appropriate for plaintiff to talk with Rosen while Rosen was reviewing the recommendation. Plaintiff alleges this violated her freedom of speech and contributed to a hostile working environment. Six hours later, Provost Rosen emailed plaintiff with a recommendation in favor of termination. This communication repeated the allegation regarding plaintiff's behavior, again without proof. It also referred to defendant Lejuez's statement regarding plaintiff's research.

Plaintiff appealed the Provost's recommendation to the Faculty Rights Board. Plaintiff claims her ability to appeal was hamstrung by the University's refusal to supply access to specific documents.

On April 15, 2016, plaintiff met with defendant Gray-Little for 15 minutes. Plaintiff described the procedural violations and the student discrimination she had experienced. She told Gray-Little that there was an extremely detrimental but untrue letter written by defendant Baskett and kept secret from plaintiff.

The University's response to plaintiff's appeal to the Faculty Rights Board included many of the documents plaintiff had been requesting. Plaintiff alleges that she first received a copy

of defendant Baskett's letter on April 30, 2016. AC ¶ 193. The Board, without conducting a hearing, made findings which were communicated to defendant Gray-Little. These findings recommended that inaccurate statements made by defendant Baskett be disregarded. The Board noted that the statements were repeated in the CCAPT recommendation and likely influenced defendant Lejuez's conclusion. AC ¶ 130. Plaintiff sought permission to include newly discovered violations in an amended appeal to the Board, but this was denied. Plaintiff alleges that defendant Baskett was required by University policy to schedule a formal feedback conference with plaintiff within two weeks of plaintiff receiving her non-reappointment letter. This was not done. Plaintiff also alleges that policies required before administering discipline were not followed, although she does not describe facts indicating that disciplinary actions were taken against her.

On May 13, 2016, plaintiff received a letter signed by Provost Rosen informing plaintiff that her appointment for the 2016-2017 academic year would be a terminal appointment. The letter stated that: "Even excluding consideration of the information in the Chair's [defendant Baskett's] letter, the Chancellor [defendant Gray-Little] determined that your research record demonstrated insufficient progress toward tenure, warranting non-reappointment." AC ¶ 139. Plaintiff asked for a more detailed

explanation but there was no response.  Plaintiff claims that there is no foundation in fact for defendant Gray-Little's conclusion.

Plaintiff claims that defendants Baskett and Lejuez and others refused to inform plaintiff of the allegations made against her, denied her the opportunity to refute the allegations against her, and denied plaintiff the means to defend herself.  Plaintiff further contends that defendants improperly applied school policies and criteria.

III. PRO SE STANDARDS

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A pro se litigant, however, is not relieved from following the same rules of procedure as any other litigant. See Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992).  A district court should not "assume the role of advocate for the pro se litigant." Hall, supra.  Nor is the court to "supply additional factual allegations to round out a plaintiff's complaint."  Whitney v. State of New Mexico, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

IV. RULE 12(b)(6) STANDARDS

Most of defendants' arguments contend that plaintiff has failed to state a claim and therefore the amended complaint should

be dismissed pursuant to Rule 12(b)(6).  The court will focus almost entirely on those arguments in this order.[1]

When deciding whether plaintiff's amended complaint "fails to state a claim upon which relief may be granted" under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (quoting Twombly, 550 U.S. at 557).  A plausibility analysis is a context-specific task depending on a host of considerations, including judicial experience, common sense and the strength of competing explanations for the defendant's conduct.  See id. at 679; Twombly, 550 U.S. at 567.  The complaint must also demonstrate

---

[1] The defendant University makes an Eleventh Amendment jurisdictional argument as to plaintiff's breach of contract claim.  As there is little practical dispute on this issue, the court does not need to elaborate upon the Rule 12(b)(1) standards.

personal involvement on the part of each individual. See <u>Grimsley</u>
<u>v. MacKay</u>, 93 F.3d 676, 680 (10th Cir. 1996).

The court accepts the plaintiff's well-pled factual
allegations as true and views them in the light most favorable to
the plaintiff. <u>United States v. Smith</u>, 561 F.3d 1090, 1098 (10th
Cir. 2009). At this point, the court's role is not to weigh
potential evidence the parties might present at trial but to assess
whether the amended complaint alone is legally sufficient to state
a claim for relief. See <u>MacArthur v. San Juan County</u>, 309 F.3d
1216, 1221 (10th Cir. 2002)(quotation omitted). An exception to
this rule is that the court may consider documents referred to in
the amended complaint that are central to plaintiff's claim. <u>Id.</u>

V. DEFENDANT UNIVERSITY'S MOTION TO DISMISS

A. <u>Res judicata</u>

The first argument to dismiss made by the defendant University
is res judicata. The court takes judicial notice of the following
facts. See <u>Columbian Financial Corp. v. Bowman</u>, 314 F.Supp.3d
1113, 1119-20 and 1132-33 (D.Kan. 2018)(taking judicial notice of
state court pleadings when considering res judicata upon a motion
for judgment on the pleadings). In August 2016, plaintiff filed
a state court lawsuit against the defendant University. The
lawsuit sought judicial review under the Kansas Judicial Review
Act (KJRA), K.S.A. 77-601 et seq. and brought a claim under Title
VII alleging national origin and sex discrimination, and illegal

retaliation.  On October 17, 2016, the parties entered into a stipulation to dismiss plaintiff's Title VII claim "with prejudice" pursuant to K.S.A. 60-241(a).  The state court judge granted the stipulated dismissal finding that plaintiff's Title VII count should be dismissed with prejudice, each party to pay their own costs and attorney's fees.

Federal courts are required to give a state court judgment the same preclusive effect as it would be given under the law of the state in which the judgment was rendered.  <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984).  Therefore, Kansas law is applied to determine whether plaintiff's claims are barred in this court by the doctrine of res judicata.[2]  Under Kansas law, there are four elements which must be met:  1) the same claim; 2) the same parties; 3) claims that were or could have been raised; and 4) a final judgment on the merits.  <u>Cain v. Jacox</u>, 354 P.3d 1196, 1199 (Kan. 2015); <u>In re Application of Fleet for Relief from a Tax Grievance in Shawnee County</u>, 272 P.3d 583, 589 (Kan. 2012).

Without going very far to address the parties' arguments, the court refuses to apply res judicata at this stage because there has been insufficient proof that a final judgment has been entered against plaintiff's Title VII action in plaintiff's state court

---

[2] The Kansas Supreme Court has observed that Kansas law does not appear to differ significantly from the federal law regarding res judicata.  <u>Stanfield v. Osborne Industries, Inc.</u>, 949 P.2d 602, 608 (Kan. 1997).

case.  A final judgment, unless secured under K.S.A. 60-254(b), usually disposes of the entire merits of a case and leaves open no further questions.  See <u>Flores Rentals, LLC v. Flores</u>, 153 P.3d 523, 527 (Kan. 2007); <u>State ex rel. State Bd. of Healing Arts v. Beyrle</u>, 941 P.2d 371, 373 (Kan. 1997).  "[T]he entry of a final judgment as to less than all the claims or for less than all the parties in an action involving multiple claims or parties is not effective unless the court makes 'an express determination that there is no just reason for delay' and 'an express direction for the entry of judgment.'"  <u>City of Salina v. Star B, Inc.</u>, 739 P.2d 933, 936 (Kan. 1987)(quoting <u>Fredricks v. Foltz</u>, 557 P.2d 1252 (Kan. 1976)).

The order signed dismissing plaintiff's Title VII action with prejudice in state court, does not appear to be in a journal entry or judgment form under K.S.A. 60-254(b) or K.S.A. 60-258. Therefore, it appears that a factual basis for showing a final judgment has not been supplied.

B. <u>Contract claim is barred by the Eleventh Amendment</u>

Plaintiff does not dispute that the Eleventh Amendment bars a breach of contract claim against the defendant University from being litigated in federal court.  See <u>Ballou v. Univ. of Ks. Med. Ctr.</u>, 871 F.Supp. 1384, 1390-91 (D.Kan. 1994).  Plaintiff asks to withdraw and dismiss this claim without prejudice pursuant to Fed.R.Civ.P. 41(a)(2).  Doc. No. 66.  Defendant University opposes

plaintiff's motion to withdraw arguing that Rule 41(a)(2) does not apply here since plaintiff is seeking dismissal of a claim, not an action. Defendant seeks disposal of the breach of contract claim in the context of the arguments made in the University's motion to dismiss.

The court agrees that Rule 41(a)(2) does not apply for the reasons stated by defendant University. Dismissal of the contract claim shall be granted in the context of defendant University's Eleventh Amendment argument which means that the claim must be dismissed without prejudice. See Colby v. Herrick, 849 F.3d 1273, 1278 (10th Cir. 2017); Shue v. Lampert, 580 Fed.Appx. 642, 644 (10th Cir. 2014). The court shall so order and direct that plaintiff's motion to withdraw be denied as moot.

C. National origin and retaliation

Plaintiff alleges that she is an American citizen. She claims that prior to being appointed as an assistant professor at KU she lived and worked in Germany as an animator, freelance artist and educator for over 30 years. She asserts that she is fluent in German and has communicated in German for most of her adult life. She earned her MFA at a German university and has taught in Germany. She has been awarded ten grants in Germany. She claims that she is recognized internationally primarily as a German filmmaker and that she has been involved in organizations which promote German culture.

She alleges in Count I that she has been discriminated against by the defendant University because of her "national origin" which she alleges includes discrimination against her German cultural or linguistic characteristics or German intellectual or cultural interests. She does not allege that she was born in Germany. She alleges that "Joritz" is a German name, but she does not claim that she was discriminated against because of her German ancestral background. Rather, she claims she was discriminated against because of linguistic traits and Germanic cultural or scholarly interests developed over decades of education, research and teaching, most of it in Germany.

The defendant University argues that plaintiff has failed to allege she is a member of a protected class for purposes of Title VII's protections against national origin discrimination. Defendant claims that plaintiff is asserting a "perceived" national origin claim and that the court should reject such a claim following Yousif v. Landers McClarty Olathe KS, LLC, 2013 WL 5819703 *3 (D.Kan. 2013). Plaintiff does not dispute that she is asserting a "perceived" national origin claim, and argues that her claim is supported by EEOC regulations, specifically 29 C.F.R. § 1606.1 which states that:

> The Commission defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an

individual has the physical, cultural or linguistic
characteristics of a national origin group.

The court finds that plaintiff's allegations do not state a claim

for national origin discrimination, perceived or otherwise,

because her allegations do not place her in the class protected

against national origin discrimination under Title VII.

Title VII prohibits discrimination based on an individual's

race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-

2(a)(1). The Supreme Court has held that "[t]he term 'national

origin' on its face refers to the country where a person was born,

or, more broadly, the country from which his or her ancestors

came." Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 86, 88 (1973).

Courts have held that "national origin" discrimination includes

claims involving discriminatory acts that do not identify the

victim's actual country of origin. E.g., Jones v. UPS Grounds

Freight, 683 F.3d 1283, 1299-1300 (11th Cir. 2012); EEOC v. WC&M

Enterprises, Inc., 496 F.3d 393, 401 (5th Cir. 2007). The Tenth

Circuit has also held that comments regarding a plaintiff's accent

may be circumstantial evidence of national origin discrimination,

citing 29 C.F.R. § 1606.1. Shah v. Oklahoma ex rel. Oklahoma Dept.

of Mental Health and Substance Abuse, 485 Fed.Appx. 971, 974 (10th

Cir. 2012); Zokari v. Gates, 561 F.3d 1076, 1090 (10th Cir. 2009).

These cases and other similar holdings involve alleged

discrimination triggered by an accent or appearance related to the

plaintiff's national origin or ethnic ancestry, even if the perpetrator may be ignorant of the plaintiff's actual national origin or ethnic ancestry. The cases are consistent with construing "national origin" by reference to certain traits or characteristics which may be linked to one's place of origin as opposed to a specific country or nation. See <u>Kanaji v. Children's Hospital</u>, 276 F.Supp.2d 399, 401-02 (E.D.Pa. 2003)(arguing that this is the better understanding of the term). Such a construction should exclude persons who may exhibit traits or characteristics of a nation other than that of their birth that are acquired in a manner unrelated to their culture or ancestry. See <u>McIntosh v. Ill. Dept. of Employment Sec.</u>, 2007 WL 1958577 *5 (N.D.Ill. 7/2/2007)("persons who acquire language skills through methods unrelated to their culture or that of their ancestors are not a protected class under Title VII").

Here, plaintiff does not assert that her accent, her linguistic characteristics, or her cultural, scholarly or professional identity with or affinity for Germany, are so related to her national origin or ethnic ancestry that she has standing to claim national origin discrimination. Plaintiff alleges that she has been discriminated against because of traits or interests that are linked to her educational and occupational past or present, not her ancestral past or national origin. This case may be compared with <u>Espinoza</u>, where the Court held that discrimination

on the basis of citizenship was not discrimination on the basis of "national origin" upon the facts in the record, although the EEOC guidelines provided otherwise and the Court acknowledged that in many situations discrimination on the basis of citizenship could have the purpose or effect of discriminating on the basis of national origin.

For these reasons, the court finds that plaintiff has failed to state a claim of national origin discrimination.

This conclusion, contrary to the defendant University's position (see Doc. No. 55, p. 17), does not mandate that plaintiff's retaliation claim in Count III be dismissed if plaintiff can show that she engaged in protected opposition to discrimination. That is, plaintiff must show that she subjectively had a reasonable belief that she was opposing national origin discrimination. See <u>Crumpacker v. Kan. Dep't of Human Res.</u>, 338 F.3d 1163, 1171 (10th Cir. 2003). Plaintiff also alleges she opposed sex discrimination. Defendant has not argued in any persuasive detail that plaintiff has failed to plausibly allege protected opposition to national origin or sex discrimination.

D. <u>Causal connection</u>

The defendant University's next argument is that plaintiff has failed to allege facts supporting a causal connection between the alleged discriminatory conduct and an adverse employment action. Defendant is arguing in essence that plaintiff has not

alleged a plausible claim of discrimination or retaliation because the facts she asserts fail to suggest a discriminatory or retaliatory motive for the adverse employment actions. To determine whether a plaintiff has stated a plausible claim of employment discrimination or illegal retaliation, the court may refer to the elements of a prima facie case, although plaintiff is not bound to set forth a prima facie case of discrimination or retaliation in her complaint. <u>Davis v. BAE Systems Technology Solutions & Services Inc.</u>, 2019 WL 993269 *3 (10th Cir. 2/28/2019)(quoting <u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1192 (10th Cir. 2012)); <u>Morman v. Campbell County Memorial Hosp.</u>, 632 Fed.Appx. 927, 934 (10th Cir. 2015).

Absent direct evidence of discrimination (which, contrary to plaintiff's claim, is not alleged in this case),[3] a prima facie case of discrimination in violation of Title VII may be established with proof that: 1) plaintiff is a member of a protected class; 2) she suffered an adverse employment action; 3) she qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class. <u>Khalik</u>, 671 F.3d at 1192. A prima facie case of retaliation may be established with proof that: 1) "'[s]he engaged in protected opposition to discrimination'"; 2)

_____

[3] "'Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption.'" <u>Riggs v. AirTran Airways, Inc.</u>, 497 F.3d 1108, 1117 (10th Cir. 2007)(quoting <u>Hall v. U.S. Dep't of Labor</u>, 476 F.3d 847, 855 (10th Cir. 2007)).

"'a reasonable employee would have found the challenged action materially adverse'"; and 3) "'a causal connection existed between the protected activity and the materially adverse action.'" <u>Id.</u> at 1193 (quoting <u>Twigg v. Hawker Beechcraft Corp.</u>, 659 F.3d 987, 998 (10th Cir. 2011)).

The court may disregard general or conclusory claims of discrimination and retaliation when there are no allegations of similarly situated employees who were treated differently, only speculation linking an adverse action to a discriminatory or retaliatory motive, and no nexus between the persons to whom she complained and the person who ordered or instigated the job action. <u>Id.</u> at 1194.

### 1. National origin

The court has held that plaintiff has not alleged facts showing that she can claim national origin discrimination because her relevant German traits or interests are not based upon her place of birth or an ancestral relationship. Instead, they are based on her educational and professional history. Even if plaintiff were not precluded from claiming national origin discrimination on that grounds, her claim should be dismissed because she does not allege a plausible causal relationship between anti-German bias and her nonrenewal.

Plaintiff alleges that in 2014 students who took a Basic Video course taught by plaintiff wrote evaluations with anti-German

commentary. One evaluation labelled plaintiff a "Nazi sympathizer." Others objected that plaintiff mispronounced well-known words, spoke of Germany all of the time, and spoke about German feminism. Plaintiff complained about these comments and asked that they be removed from her record. This was not done. Plaintiff also complained that a member of her first PTTR committee commented that plaintiff may have had some difficulty in adjusting her communication and teaching skills to her new teaching environment after working extensively in Germany. Plaintiff argues that this blamed her for being the target of discriminatory remarks.

Plaintiff does not link this evidence or other evidence of an anti-German bias to the nonrenewal decision. The decisionmakers did not engage in the commentary or openly base the nonrenewal recommendations or ruling upon the students' comments or plaintiff's classroom performance. Indeed, exhibits to the amended complaint refer to plaintiff's teaching record as "the strongest component of your dossier" and an area of "commendable" improvement. Doc. No. 49-2, Exhibit L (Letter of CLAS Dean, defendant Carl Lejuez). Defendant Baskett also stated that he concurred with the assessment that plaintiff's overall teaching/advising record demonstrated progress toward tenure. Doc. No. 49-2, Exhibit K. According to the complaint, the decision was made (wrongly) on the grounds that plaintiff's research record

showed insufficient progress toward tenure. Plaintiff has also produced evidence in Exhibit K to the amended complaint, that the Chair of her department (defendant Baskett) argued against continuing plaintiff's appointment because he was unconvinced that her research record demonstrated adequate progress and because her service record should be considered in light of "an ongoing pattern of disrespectful, combative, and disruptive behavior from [plaintiff] directed towards other faculty, students, and staff."

Plaintiff makes the conclusory claim that "every performance evaluation" was tainted by the students' anti-German remarks. AC ¶ 159. But, plaintiff does not allege facts showing that the refusal to remove the comments from plaintiff's performance record exhibited anti-German bias by school administrators. Nor does she allege that similarly-situated instructors making complaints about student evaluations were treated differently. While an anti-German bias may be a possible explanation for actions against plaintiff, plaintiff does not allege facts showing it was plausible that the non-renewal decision was motivated by anti-German animus reflected or propelled by the 2014 comments of Basic Video students or the Administration's denial of her requests to remove the comments from her performance record.

Plaintiff also alleges that "Chair Baskett and Chair Stuart Macdonald lied about the conditions of Professor Joritz's German-related research in their efforts to halt her German-related

research by having Professor Joritz fired." AC ¶ 163. She claims that defendant Baskett overstated or misrepresented limits upon plaintiff's access to materials connected to plaintiff's "German-related research" while not commenting upon her non-German research. Thus, plaintiff charges that an anti-German bias motivated the comments about plaintiff's German-related research and then suggests that the same bias motivated plaintiff's nonrenewal. But, plaintiff fails to allege facts plausibly showing that the alleged misrepresentations regarding plaintiff's access to materials for her German-related research were motivated by an anti-German bias or that such bias motivated her nonrenewal.[4] And, plaintiff does not allege that instructors with similar research records but without plaintiff's German ties and scholarly interests were treated differently by defendants Baskett and Macdonald or other University administrators.

Plaintiff does allege that defendant Baskett, citing "lack of faculty", denied her request for a research-intensive semester (i.e., semester off from teaching) for the Spring semester 2016 and that he delayed his response to a second request to have the Spring 2016 semester off which plaintiff made in November 2015. Plaintiff claims that tenure-track faculty are offered one such

_____

[4] According to Exhibit K, defendant Baskett's opposition to plaintiff's renewal was also based upon his view of plaintiff's service record as reflected in her behavior towards faculty, students and staff. This motivation does not appear related to anti-German animus.

semester off at a time of their choosing prior to their tenure review.  AC ¶ 79.  She asserts that the denial of this request, which was granted to similarly situated professors, is evidence of national origin discrimination.  Plaintiff does not assert, however, that "lack of faculty" was a pretextual nondiscriminatory reason to deny her request for a break from teaching during the Spring 2016 semester.  Therefore, the court does not find that this provides a plausible ground supporting plaintiff's claim of national origin discrimination.

In sum, the court finds that plaintiff's allegations merely speculate without a plausible factual basis that the motivation for plaintiff's nonrenewal was anti-German prejudice.

### 2. Sex

Plaintiff alleges that she complained to defendant Baskett that a male professor showed an excerpt of a "notoriously misogynist film" (*A Clockwork Orange*) "while detailing the symbolism in the film that referred to male masturbation" without giving students a "trigger-warning", but that the same professor berated plaintiff for failing to give students a "trigger-warning" when she showed a non-offensive film excerpt in which a character said the word "rape."  She asserts that Baskett defended the professor to every administrator up the chain of command and suggested that plaintiff's complaint was malicious without explaining its context.  Plaintiff further alleges that when she

won a competitive award the University refused to recognize her in the School of Arts social media platform, but when a male faculty member from the School of Arts won the same award the following year, he was not only recognized on the platform, but promoted to full professor.  Plaintiff also alleges that Baskett threatened plaintiff in her office, displaying an aggressive, anti-female bias he does not display toward men.

The court finds these allegations are sufficient to allege a plausible causal connection between gender bias and the adverse job action in this case.

### 3. Retaliation

The defendant University's memorandum in support of the motion to dismiss argues that because plaintiff "fails to plead any causal connection between the allegations of discrimination and adverse action, all of her Title VII claims should be dismissed as a matter of law." Doc. No. 55, p. 18.  The memorandum does not argue that plaintiff lacked a reasonable good faith belief that she had opposed discriminatory behavior.  And, until the reply brief, the defendant University does not address with any detail the causal element as regards retaliation.  Under these circumstances, the court shall not find that plaintiff has failed to state a claim of illegal retaliation.  See Lemmons v. Evcon Industries, Inc., 2011 WL 2790195 *8 (D.Kan. 7/14/2011)(generally a court will not consider new arguments raised for the first time

in a reply brief); <u>Boilermaker-Blacksmith Nat. Pension Fund v.</u> <u>Gendron</u>, 67 F.Supp.2d 1250, 1257 n. 4 (D.Kan. 1999)(striking new material raised in reply brief to support motion to dismiss or transfer).

### E. Timeliness

The final argument made by the defendant University is that plaintiff's Title VII claims are untimely "to the extent that plaintiff relies on the student comments as adverse employment actions in and of themselves." Doc. No. 55, p. 19. Plaintiff has responded that "[t]he student comments themselves do not comprise 'adverse employment actions' . . ." Doc. No. 67, p. 48. Thus, the parties agree that plaintiff may not proceed under Title VII with an action claiming that the students' comments were adverse employment actions. Therefore, any claim based upon the student comments as adverse employment actions shall be dismissed.

## VI. INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

In Count VII of the amended complaint, plaintiff alleges that defendants denied plaintiff due process "throughout her evaluations and at other times, as described but not limited to the allegations included" in the complaint. AC ¶ 235. Plaintiff also alleges that defendant Baskett and "the University" denied plaintiff her right to speak to other faculty members during her 2015/16 PTTR and that "defendants effectively halted [plaintiff]

from objecting to illegal practices by firing her."  AC ¶¶ 236-237.

A. <u>Specificity</u>

The individual defendants contend that the amended complaint does not fulfill plaintiff's obligation to make clear exactly who is alleged to have done what to whom, i.e., provide fair notice of plaintiff's claims to defendants.  See <u>Robbins v. Okla. ex rel. Dep't of Human Servs.</u>, 519 F.3d 1242, 1250 (10th Cir. 2008).  The amended complaint is sixty-seven pages.  The court's summary of its allegations provides some feeling for the amount of detail in the complaint.  The amended complaint is not a paragon of clarity. But, mindful of the leniency encouraged toward <u>pro se</u> pleadings, the court finds that the amended complaint has provided sufficient detail to avoid dismissal for failure to state a claim.

B. <u>Qualified immunity – procedural due process</u>

Defendants argue that they are entitled to qualified immunity against plaintiff's procedural due process claim.  When a qualified immunity defense is raised in a Rule 12(b)(6) motion, it is the defendants' conduct as alleged in the complaint that is scrutinized for objective legal reasonableness.  <u>Thomas v. Kaven</u>, 765 F.3d 1183, 1194 (10th Cir. 2014)(quoting <u>Behrens v. Pelletier</u>, 516 U.S. 299, 309 (1996)).

## 1. Plaintiff's allegations

To re-summarize plaintiff's allegations, she was a tenure-track professor.  As required for all tenure-track professors, she had a major performance evaluation (PTTR) at the 2.5-year mark of her employment.  AC ¶ 51.  A PTTR is a "multi-tiered evaluation process."  AC ¶ 53.  Like all similar faculty members, plaintiff was required to prepare a dossier, including "all student evaluations including student comments, peer evaluations (class observations by other faculty members), a faculty member's teaching statement and research statement and a list of the faculty member's published and completed work."  Id.  "The Departmental PTTR Committee, consisting of departmental faculty colleagues, conducts an Initial Review of the 'candidate's' dossier and writes a narrative for each of the evaluated criteria:  Teaching, Creative Research/Scholarship and Service [and] [t]hey then evaluate" the candidate's progress for each category.  AC ¶ 54.  At the conclusion of plaintiff's first review in 2015, plaintiff "received a letter . . . which included an assessment of the Review, suggestions for improvement and the determination that 'improvement is required for continued progress towards tenure.'"  AC ¶ 55.  Plaintiff was told "she must submit to another review in 2015-2016" and that "[f]ailing the next year's review would result in 'non-reappointment', i.e. employment termination."  Id.  She was informed there were no appeal procedures for the first PTTR

review.  AC ¶ 59.  Plaintiff claims that there were "multiple procedural and policy violations" committed in the first review and that these violated her right to due process.  AC ¶ 73.  The court will not detail the alleged violations because the individual defendants are not alleged to have participated in the first PTTR review.

Prior to the second PTTR review, defendant Baskett observed plaintiff's classroom performance, but refused to permit plaintiff to see his evaluation. AC ¶ 78.  Defendant Baskett also refused plaintiff permission to take a break from teaching during the Spring 2016 semester to concentrate on research. AC ¶ 79.

The second PTTR process began with "muddled instructions." AC ¶ 81.  The "University attempted to change the PTTR policy without going through proper procedures."  AC ¶ 82.  The process started late (January 2016) and was "extremely rushed" (AC ¶ 84); the schedule was belatedly finalized (AC ¶ 91); one member of the committee was named to the committee shortly before plaintiff was to turn in her final materials (AC ¶ 99); and plaintiff was told to turn in her materials two days early.  AC ¶ 102.

Initially, defendant Baskett improperly served as the PTTR Committee chairman when he should have been an ex-officio member. AC ¶ 85 at p. 22.[5]  He was removed as chairman of the committee on

---

[5] The amended complaint has two sets of paragraphs numbered 85 through 90 at pp. 22-23 and pp. 24-25.

or about January 26, 2016.  AC ¶ 96.  Baskett did not permit plaintiff to ask questions of or communicate with PTTR committee members except through defendant Baskett.  AC ¶ 90 at p. 24. Defendant Baskett refused to recuse the former chair of the department who had participated in the first PTTR review and, plaintiff alleges, violated policies and procedures. AC ¶ 92. Defendant Baskett wrote a letter to the CCAPT which was submitted with the PTTR materials.  The letter, which was not disclosed to plaintiff for several weeks, criticized plaintiff's research record and stated that plaintiff's service record was compromised by various occasions of disrespectful and disruptive behavior. Doc. No. 49-2, Ex. K.

The PTTR committee gave plaintiff a favorable recommendation. Doc. No. 49-2, Ex. L.  But, on or about April 8, 2016, defendant Lejuez and the CCAPT, led by defendant Macdonald, disagreed that plaintiff had demonstrated progress towards tenure and, relying upon the letter from defendant Baskett, recommended non-reappointment to the Provost.  AC ¶¶ 108-109, 118; Doc. No. 49-2 Ex. L.  Prior to the CCAPT's determination, defendant Lejuez discussed with CCAPT members that they should focus on plaintiff's existing research record and evidence of progress towards completion of her proposed book.  AC ¶ 117.  Contrary to CLAS policy, defendant Baskett failed to schedule a formal feedback

conference with plaintiff within two weeks of plaintiff's receipt of the non-reappointment letter. AC ¶ 132.

The recommendation of defendant Lejuez was forwarded to the University Provost who concurred with the recommendation in a letter written April 13, 2016. Doc. No. 49-2, Ex. H. Plaintiff appealed this decision to the Faculty Rights Board. The Faculty Rights Board reviewed plaintiff's allegations of procedural violations in the first and second PTTR reviews. Doc. No. 49-2, Ex. F. On May 11, 2016, the Board found that defendant Baskett, defendant Lejuez and the CCAPT relied on factually inaccurate information relating to obstacles which would prevent plaintiff from completing her proposed book. Id. The Board recommended that this inaccurate information be disregarded when evaluating plaintiff's research record. Id. It also determined that the department chairs should not have served as chairs of the PTTR committees, but should have instead served as non-voting members. The Board remarked that this suggested a lack of independent judgment of plaintiff's record. Id.

On May 13, 2016, plaintiff was informed that defendant Gray-Little accepted the recommendation of non-reappointment, finding that "even excluding consideration of the information in the Chair's letter, . . . that [plaintiff's] research record demonstrated insufficient progress toward tenure, warranting non-reappointment." Doc. No. 49-2, Ex. J. Plaintiff was informed

that her employment would end with the close of the 2016-2017 academic year on May 16, 2017.

Generally, plaintiff alleges that: evidence did not support basing non-reappointment upon plaintiff's behavior as there were no prior sanctions or grievances against plaintiff (AC ¶¶ 133, 135); defendants refused to provide plaintiff with copies of relevant documents; defendants refused to inform plaintiff of the allegations against her; defendants failed to follow University policies and procedures; and defendants' conclusions regarding plaintiff's research and service records, including any behavioral evaluations, were unsubstantiated.

## 2. Qualified immunity standards

Once an individual defendant has raised a defense of qualified immunity, "the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." Margheim v. Buljko, 855 F.3d 1077, 1087 (10th Cir. 2017). To be clearly established, a legal principle must be settled law such that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. District of Columbia v. Wesby, 138 S.Ct. 577, 589-90 (2018). It also must be clear that the legal principle prohibits the official's conduct in the particular circumstances before him. Id. at 590. "This requires

a high 'degree of specificity.'" Id. (quoting Mullenix v. Luna, 136 S.Ct. 305, 309 (2015)).

### 3. Clearly established law

The individual defendants assert, among other arguments, that plaintiff "cannot point to a factually analogous case clearly establishing that the specific challenged conduct is unconstitutional." Doc. No. 71, p. 11. Plaintiff makes a three-pronged reply to defendants' qualified immunity argument, but she fails to carry the second part of plaintiff's burden of proof, that is to show that defendants' conduct violated a clearly established right.

First, plaintiff argues against defendants' claim that plaintiff's post-deprivation remedy via a state court KJRA action satisfies plaintiff's entitlement to procedural due process. In other words, she disputes defendants' assertion that there was no constitutional violation. This point addresses the first part, but not the second part of plaintiff's burden of proof. Next, plaintiff argues that qualified immunity does not apply to injunctive relief claims against the individual defendants. While this general principle is correct, it does not apply here because plaintiff was not allowed to proceed upon the injunctive relief claims against the individual defendants when leave was granted to amend the complaint. See Doc. Nos. 43 and 44. Nor does it deny

the applicability of the qualified immunity defense against a money damages claim.

Plaintiff's third and final response to the qualified immunity argument makes the summary claim that there has been an "unreasonable violation of a clearly established constitutional right." Doc. No. 76, p. 12. But, plaintiff cites no authority which supports this position.[6]

The court is unaware of any settled authority supporting a constitutional right to pre-tenure review procedures which the individual defendants violated by their conduct as alleged in the amended complaint, particularly in light of the multiple levels of review and the opportunity for further review in a breach of contract action or action under the KJRA. Plaintiff had a fairly comprehensive understanding of the criteria and procedures involved in the review process. She had an opportunity or opportunities to participate in the process and tell her side of the story. She was given an explanation of why the action she opposed was taken. And, she was permitted several levels of review, at least one of which (the KJRA action) is ongoing in state court.

We note that plaintiff's constitutional right to procedural due process is not defined by the University's policies and

---

[6] Plaintiff cites one case, <u>Wallace v. County of Comal</u>, 400 F.3d 284 (5th Cir. 2005) which does not concern a due process claim. It concerns a First Amendment claim.

procedures for pre-tenure review. See Riggins v. Goodman, 572
F.3d 1101, 1109 n.3 (10th Cir. 2009); Hulen v. Yates, 322 F.3d
1229, 1247 (10th Cir. 2003); Bunger v. University of Oklahoma Bd.
of Regents, 95 F.3d 987, 990-91 (10th Cir. 1996). So, any alleged
failure to follow those procedures does not clearly substantiate
a procedural due process violation. We further note that this
court's role is not to serve as a super-personnel board to reverse
incorrect or ill-advised decisions, in spite of plaintiff's
extensive factual allegations and results with which the court may
have "some discomfort." See Tonkovich v. Kansas Bd. of Regents,
159 F.3d 504, 534 (10th Cir. 1998)(granting qualified immunity upon
motions to dismiss in case brought by tenured professor); see also
Cuenca v. University of Kansas, 101 Fed.Appx. 782, 791 (10th Cir.
2004)(court will not review business judgment that plaintiff's
qualifications did not meet requirements for tenure). Therefore,
plaintiff's complaints concerning the evaluation of her research
record and her "behavioral" profile do not plausibly demonstrate
a clearly established violation of her right to procedural due
process.

Nor do we find clearly settled precedent supporting a due
process claim involving pre-tenure review where: document
production was delayed or denied; the process was "rushed" or
muddled; the department chair provided input via an undisclosed
letter advocating against the recommendation of the department

faculty committee; and the Dean of the College provided comments regarding the focus of the committee reviewing the department faculty committee recommendation. The court has considered all of plaintiff's allegations and fails to find a violation of a clearly established right to procedural due process. To reiterate, the circumstances of this case involve multiple levels of pre-deprivation review and the opportunity for post-deprivation review.

C. Substantive due process

It is not clear whether the amended complaint seeks to bring a substantive due process claim against the individual defendants. If plaintiff is bringing a substantive due process claim, the court finds that plaintiff's allegations fail to plausibly describe the type of egregious and outrageous behavior that may provide the basis for such a claim. See Tonkovich, 159 F.3d at 528; Babbar v. Ebadi, 2000 WL 702428 *10 (10th Cir. 2000); Hays v. Park City School District, 214 F.Supp.3d 1162, 1182-83 (D.Utah 2016).

D. First Amendment

The amended complaint in Count VII alleges generally that defendant Baskett and "the University" denied plaintiff the right to speak with other faculty members during her 2015/16 PTTR review and that "defendants" effectively halted plaintiff from objecting

to illegal practices by firing her.[7] AC ¶¶ 236-237. The alleged

denial of plaintiff's right to speak with other faculty members

apparently refers to defendant Baskett's instructions which

restricted plaintiff's direct communications with faculty members

on her PTTR committee in 2016.[8] Plaintiff has alleged:

> On January 11, 2016, Chair Baskett confirmed to
> Professor Joritz via email that she was not to
> communicate with other PTTR committee members,
> stipulating that the only communication, including
> feedback, would occur exclusively through himself and
> Sahin [his assistant]. . . . This isolated Professor
> Joritz from the very faculty members who should have
> served as her strongest advocates and it violated
> Professor Joritz's constitutional rights. It also
> enabled the Chair to manipulate the evaluation process
> by controlling all communication between Professor
> Joritz and the committee members, with no one present to
> participate in or hear their conversations.

AC ¶ 90, p. 24. Plaintiff does not specifically allege that she

was restricted from or sanctioned for speaking publicly about any

issue. The amended complaint also describes numerous examples of

plaintiff meeting and discussing her discrimination concerns with

---

[7] In plaintiff's response to the individual defendants' motion to dismiss, she claims that her allegations of discrimination were ignored by defendants. Doc. No. 76, p. 16. This does not describe a First Amendment violation. See Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 465 (1979)(First Amendment does not impose an obligation on the government to listen or respond); Osborne v. Fernandez, 2009 WL 884697 *44 (S.D.N.Y. 3/31/2009)(whether plaintiff's submissions are considered or acted upon is not of constitutional dimension); Scroggins v. City of Topeka, 2 F.Supp.2d 1362, 1375 (D.Kan. 1998)(the right to petition government does not create a corresponding duty to act).

[8] Plaintiff does not identify another individual defendant who participated in this alleged violation.

various members of faculty and administration.  AC ¶¶ 45, 178. Some of these examples happened after January 11, 2016.

Defendants first argue, regarding Count VII, that the amended complaint fails to describe a denial of speech protected by the First Amendment.  Government employee speech regarding matters of mere personal interest is not subject to protection under the First Amendment.  Gardetto v. Mason, 100 F.3d 803, 812 (10th Cir. 1996). In deciding whether speech is a matter of public concern, as opposed to mere personal interest, the court considers the content, form and context of the communication.  Id.  Speech pertaining to internal personnel disputes and working conditions ordinarily is not of public concern, but speech which exposes improper operations of the government or the integrity of government officials is of public concern.  Id.  The court may consider whether the speaker is motivated to redress personal grievances or to advance a broader purpose.  Id.  The court is also mindful that a Government employer needs a significant degree of control over employee communications to efficiently provide public services.  Helget v. City of Hays, Kansas, 844 F.3d 1216, 1221 (10th Cir. 2017)(quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).

Plaintiff claims that she was required to communicate with the PTTR committee members through defendant Baskett or his assistant regarding the evaluation of her progress toward tenure. This, however, did not restrict plaintiff from speaking about a

matter of public concern. See Colburn v. Trustees of Indiana University, 973 F.2d 581, 588 (7th Cir. 1992)(letters from nontenured faculty members regarding process by which they were evaluated were not matters of public concern); Ghosh v. Ohio University, 1988 WL 118053 *5 (6th Cir. 1988)(grievances concerning a tenure/nonrenewal decision are private concerns); Shearn v. West Chester University of Pennsylvania, 2017 WL 1397236 *12 (E.D.Pa. 4/19/2017)(in the absence of unusual circumstances, tenure decisions are not matters of public concern); Morreim v. Univ. of Tenn., 2013 WL 5673619 *19 (W.D.Tenn. 10/17/2013)(handling of tenure review is not a matter of public concern); Milano v. Board of Education of Franklin Tp., 2012 WL 5498012 *5 (D.N.J. 11/13/2012)(statements arguing for tenure were matter of personal concern); Hong v. Grant, 516 F.Supp.2d 1158, 1169 (C.D.Cal. 2007)(comments regarding faculty performance reviews, staffing and hiring do not implicate matters of public concern); Ballard v. Blount, 581 F.Supp. 160, 164-65 (N.D.Ga. 1983)("absent unusual circumstances an administrative decision to grant or deny tenure . . . is not a matter of public concern"); see also, Bunger, 95 F.3d at 992 (comments about exclusion of untenured faculty from graduate administrative council are not of public concern). At the very least, this authority (and plaintiff's failure to sustain her burden to show contrary authority) convinces the court that the individual defendants are entitled to qualified immunity

against this part of plaintiff's First Amendment claim.  See <u>Hong</u>
<u>v. Grant</u>, 403 Fed.Appx. 236, 237-38 (9th Cir. 2010)("It is far from
clearly established today . . . that university professors have a
First Amendment right to comment on faculty administrative matters
without retaliation.").

The final paragraph of Count VII, where plaintiff alleges
that she was fired to halt her from objecting to illegal practices,
can be interpreted as making a retaliation claim against the
individual defendants.  The individual defendants' motion to
dismiss does not address this aspect of Count VII in any detail.
Defendants assert that the claim should be summarily dismissed
because it does not specify any action any individual defendant
took.  The court disagrees.  Plaintiff alleges that she was fired
and the amended complaint contains allegations, summarized herein,
describing what the individual defendants did leading to
plaintiff's termination.  Defendants also assert that the amended
complaint does not allege that the individual defendants
prohibited her from speaking against or reporting discrimination
and that plaintiff raised these concerns many times during the
administrative process.  While this appears to be correct, it does
not defeat a claim of retaliatory termination for speaking about
a matter of public concern.

The First Amendment protects government employees from
retaliation because of their speech on matters of public concern,

if made in the role of a concerned citizen. See Garcetti, 547
U.S. at 418-19. To prevail upon such a claim, a plaintiff must
show that: 1) the protected speech was not made pursuant to an
employee's official duties; 2) the protected speech addressed a
matter of public concern; 3) the government's interests as an
employer did not outweigh the employee's free speech interests; 4)
the protected speech was a motivating factor in the adverse
employment action; and 5) the defendant would not have made the
same employment decision in the absence of the protected speech.
Lincoln v. Maketa, 880 F.3d 533, 538 (10th Cir. 2018). Thus, it
is not necessary to show that plaintiff's exercise of speech was
expressly prohibited or that plaintiff was actually deterred from
speaking.

The individual defendants also claim qualified immunity
stating that plaintiff makes no allegation of constitutionally
protected speech and that plaintiff cannot establish that her
speech was constitutionally protected in this factual context. As
stated previously, the court is convinced that it is not clearly
established that restrictions upon plaintiff's contact with
faculty members of her PTTR committee violated the First Amendment.
Upon the allegations as currently presented, however, the court
cannot say the same regarding plaintiff's reports or complaints of
discrimination in other situations. To this extent, the qualified
immunity claims shall be denied without prejudice.

VII. CONCLUSION

In conclusion, the defendant University's motion to dismiss (Doc. No. 54) shall be granted in part and denied in part. Plaintiff's claims of national origin discrimination under Title VII shall be dismissed, including any claim asserting that student comments were adverse employment actions. In addition, plaintiff's breach of contract claims shall be dismissed without prejudice. The individual defendants' motion to dismiss (Doc. No. 70) also shall be granted in part and denied in part. Plaintiff's procedural due process claims and any substantive due process claims are dismissed and plaintiff's First Amendment claims alleging that she was denied the right to speak with other faculty members during her PTTR review are dismissed. Plaintiff's motion to withdraw her breach of contract claim (Doc. No. 66) is denied as moot.

**IT IS SO ORDERED.**

Dated this 8th day of April, 2019, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge