FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 18, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

CATHERINE A. JORITZ,

    Plaintiff - Appellant,

v.

THE UNIVERSITY OF KANSAS,

    Defendant - Appellee,

and

BERNADETTE GRAY-LITTLE; CARL LEJUEZ; STUART J. MACDONALD; MICHAEL BASKETT,

    Defendants.

No. 20-3234
(D.C. No. 5:17-CV-04002-SAC-JPO)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **BACHARACH**, and **CARSON**, Circuit Judges.

_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff Catherine Joritz, proceeding pro se[1], appeals the district court's dismissal of her claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), against her former employer, the University of Kansas. On appeal she argues that the district court (1) erroneously applied res judicata doctrine, (2) should have directed the recusal of the magistrate judge because of a conflict of interest, (3) should not have stayed discovery during a prior interlocutory appeal and should have delayed ruling on the res judicata issue until she filed a second amended complaint, and (4) applied unduly harsh standards to her as a pro se litigant. We conclude that these arguments lack merit. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

I.   BACKGROUND

The following facts do not appear to be in dispute. Professor Joritz was a tenure-track Assistant Professor in the Film and Media Studies Department within the College of Liberal Arts and Sciences at the University. In May 2016 the University notified her that her appointment as a professor would be terminated after the 2016–17 academic year. The next month Professor Joritz sued the University in state court, seeking review under the Kansas Judicial Review Act (KJRA), Kan. Stat. Ann. §§ 77-601 to -631, of the nonreappointment decision. Her complaint in the state-

---

[1] Because Joritz proceeds pro se, we construe her arguments liberally, but we "cannot take on the responsibility of serving as [her] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

court action also alleged that the University engaged in unlawful retaliation, sex discrimination, and national-origin discrimination in violation of Title VII.

When Professor Joritz filed the state-court action, she had not yet received a right-to-sue letter from the federal Equal Employment Opportunity Commission (EEOC), prompting the University to move for dismissal of her Title VII claim for failure to exhaust administrative remedies.  Before the state court decided this motion, Professor Joritz and the University submitted a "Joint Stipulation of Partial Dismissal," in which "the parties stipulate[d] and agree[d] to the dismissal of [the Title VII claim] with prejudice."  R. vol. I at 112.  The state court entered an order accepting the stipulation and dismissing the Title VII claim.

The EEOC mailed a right-to-sue letter to Professor Joritz in October 2016.[2] In January 2017, with her KJRA claims still pending in the state-court action, Professor Joritz filed a new action in the United States District Court for the District of Kansas alleging violations of Title VII.  The University moved to dismiss, arguing in part that Joritz's Title VII claims were barred by res judicata.  The district court refused to apply res judicata because there was not sufficient evidence that there had been a judgment in the state-court action.[3]

---

[2] The right-to-sue letter indicates that it was mailed on October 13, 2016.  The stipulation in the state-court action was electronically filed four days later on October 17.  The record is unclear whether Professor Joritz had received the right-to-sue letter before signing the stipulation.

[3] The district court did, however, grant the University's motion under Fed. R. Civ. P. 12(b)(6) to dismiss Professor Joritz's claims of national-origin discrimination, including any claim asserting that student comments constituted

3

After the state court entered judgment against Professor Joritz on her KJRA claims, the University filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), once again arguing that res judicata barred Professor Joritz's employment-discrimination claims. This time, the court granted the motion and dismissed all remaining claims against the University. Professor Joritz moved to alter or amend the judgment under Fed. R. Civ. P. 59(e). The district court denied the motion, and this appeal followed.

## II.   ANALYSIS

### A.   Standard of Review

We review de novo the district court's ruling under Federal Rule of Civil Procedure 12(c). *See BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1200 (10th Cir. 2016) (citation omitted). We assume the truth of the well-pleaded allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. *See id.* Also, "the question of the application of res judicata to the facts . . . is a pure question of law subject to de novo review." *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000).

### B.   Res Judicata

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75,

---

adverse employment actions. Professor Joritz does not challenge those dismissals on appeal.

81 (1984). We therefore apply Kansas law governing the preclusive effect of a Kansas judgment. Under Kansas law, "claim preclusion, sometimes called res judicata, . . . prevents parties from relitigating the same claim or cause of action even if certain issues were not litigated in the prior action." *Herington v. City of Wichita*, 500 P.3d 1168, 1177 (Kan. 2021). The predicate for the claim-preclusion bar "consists of four elements: (1) same cause of action or claim, (2) same parties, (3) claims in the current case were or could have been raised in the prior action, and (4) final judgment on the merits of the prior action." *Id.* Even when these four elements are present, however, res judicata does not apply if "the party seeking to avoid preclusion did not have a full and fair opportunity to litigate the claim in the prior suit." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (internal quotation marks omitted).

The Kansas Supreme Court has also instructed that "courts applying res judicata principles must employ a flexible, common-sense construction that recognizes the reality of a given situation in order to sustain its primary goals, which are rooted in the requirements of justice and sound public policy." *Herington*, 500 P.3d at 1178. In particular, "before the doctrine is either invoked or rejected, a court must conduct a case-by-case analysis that moves beyond a rigid and technical application to consider the fundamental purposes of the rule in light of the real substance of the case at hand." *Cain v. Jacox*, 354 P.3d 1196, 1199 (Kan. 2015).

There is no dispute that Professor Joritz and the University were parties to the state-court action and that she raised her Title VII claims in that action. But

Professor Joritz argues that the state-court action did not result in a final judgment on the merits and that she did not have a full and fair opportunity to litigate her claim. She bases her argument on a change in the law after she stipulated to dismissal of the Title VII claim. At the time of her stipulation, Tenth Circuit precedent held that federal courts lacked jurisdiction over unexhausted claims. In *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018), though, we overruled that precedent, holding that failure to file (or, presumably, complete the pursuit of) an EEOC charge "merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." Professor Joritz argues that the district court acted inequitably, contrary to the core purposes of res judicata, by applying *Lincoln* after she agreed to the dismissal.[4] She further argues that the University's attorney was solely responsible for the with-prejudice language in her stipulated dismissal in the state-court action, that she did not understand the significance of that language in the stipulation she signed, and that as a pro se litigant she should not be held to it.

To begin with, we reject Professor Joritz's claim that there was no final adjudication on the merits in the state-court action. The state court resolved all claims before it in its memorandum decision of March 6, 2020. Under Kansas law

---

[4] Although Professor Joritz frames this argument with the assertion that the district court "dismiss[ed] this case based on outdated case law," Aplt. Opening Br. at 7, in substance she criticizes the district court for applying post-, not pre-, 2018 case law on whether failure to exhaust administrative remedies is jurisdictional.

this memorandum decision is a final judgment. *See McFadden v. McFadden*, 357 P.2d 751, 755–56 (Kan. 1960) ("[W]here a court has jurisdiction of the parties to an action and of the subject matter thereof, and renders a judgment within its competency, such judgment is final and conclusive, unless corrected or modified on appeal."). Merged into this judgment was the earlier order dismissing her Title VII claims. *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) ("[I]t is a general rule that all earlier interlocutory orders merge into final orders and judgments except when the final order is a dismissal for failure to prosecute.") Professor Joritz acknowledged the finality of that judgment in her docketing statement for her appeal of that judgment. *See* R. vol. II at 225 (attesting that the state-court order "dispose[d] of the action as to all claims by all parties").

Professor Joritz's arguments regarding the effect of *Lincoln* are also misguided. Both before and after *Lincoln*, it has been the law that a Title VII claim must be dismissed if the defendant shows that the claim has not been administratively exhausted. *See Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018). One way to show failure to exhaust is to establish that the plaintiff has not received a right-to-sue letter from the EEOC. A dismissal on that ground is ordinarily without prejudice, because the plaintiff would typically be authorized to sue if she later receives such a letter. That would be true whether or not the failure to exhaust is considered jurisdictional. The only effect of treating failure to exhaust as a jurisdictional issue is that the court must address the matter even if it is not raised by the defendant. *See id.* In this case the University properly raised the failure to

7

exhaust. We do not see why the state-court litigation would have proceeded any differently if we had decided *Lincoln* before the dismissal of Professor Joritz's Title VII claim. In particular, the preclusive effect of the state-court judgment under Kansas res judicata doctrine is the same regardless of whether or not failure to exhaust is a jurisdictional defect.

The important point for res judicata purposes is that Professor Joritz stipulated that the dismissal of her Title VII claim would be *with* prejudice —that is, she stipulated that she could not bring the claim later in any other forum. Her stipulation can be binding even though it goes beyond what would follow from a dismissal without prejudice for lack of administrative exhaustion. *Cf. Stone v. Dep't of Aviation*, 453 F.3d 1271, 1279 (10th Cir. 2006) ("[A] plaintiff waiting on a right-to-sue letter as to one of his claims could . . . later amend his complaint once he received the right-to-sue letter.").

Professor Joritz complains that she was misled by counsel for the University when she agreed to the stipulation. Perhaps there is merit to that complaint. But the forum in which to raise the complaint is the state-court litigation. Professor Joritz has failed to point to any authority permitting us to re-examine the validity of her state-court stipulation.

Professor Joritz also argues that the district court erred by giving res judicata effect to the state-court action because the state court's final order was "chock full of errors," Aplt. Opening Br. at 15 (quoting R. vol. II at 254), and that these errors "undermine[d] the fundamental fairness of the original proceedings" in that case.

*Id.* at 15 (emphasis and internal quotation marks omitted). But "[t]he fairness of the prior proceeding is determined by examining any procedural limitations, the party's incentive to fully litigate the claim, and whether effective litigation was limited by the nature or relationship of the parties." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1243 (10th Cir. 2017) (internal quotation marks omitted). "Due process . . . only requires that a party have a full and fair opportunity to litigate its case." *Crocog Co. v. Reeves*, 992 F.2d 267, 270 (10th Cir. 1993). Professor Joritz's disagreement with particular rulings by the state court does not establish that she lacked a full and fair opportunity to litigate her case. *See SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990) ("[D]isagreement with the district court's legal ruling in [the prior action] . . . does not mean that [the losing party] was denied the full and fair opportunity to litigate."). To hold otherwise would "eviscerate[]" the doctrine of res judicata. *See id.* Correction of a trial court's errors is to be achieved through appellate review, not by filing the claims anew and arguing that the prior judgment is not binding because of the trial court's errors.

### C. Recusal of Magistrate Judge

Professor Joritz argues that the district court erred by failing to order the recusal of the magistrate judge, who she alleges had conflicts of interest arising from his connections with the University, including his position as an adjunct professor at the University's law school. But we do not need to resolve this issue because any error would be harmless. "Under Fed. R. Civ. P. 61, the court must disregard all errors and defects that do not affect any party's substantial rights." *Bridges v.*

9

*Wilson*, 996 F.3d 1094, 1099 (10th Cir. 2021) (internal quotation marks omitted). When applying the harmless-error doctrine, we "exercise[] common sense, trying to make a realistic assessment of the practical likelihood that the result in the district court would have been different had the error not occurred." *Id.* (internal quotation marks omitted). Here, although the magistrate judge certainly made some decisions in the course of the litigation, we fail to see any effect of those decisions on either the dismissal order or the order denying Professor Joritz's motion for Rule 59 relief, the legal correctness of which we have independently confirmed on de novo review. Even assuming that failure to recuse was error, Professor Joritz cannot show that such error affected the result. *See Higganbotham v. Okla. ex rel. Okla. Transp. Comm'n*, 328 F.3d 638, 645–46 (10th Cir. 2003) (any alleged error in failure to recuse was harmless because the case involved "straightforward questions of law" that this court "independently reviewed . . . de novo and concluded that the plaintiff's complaint was properly dismissed").

        **D.**    **Stay of Discovery and Denial of Motion for Leave to Amend**

Professor Joritz challenges the magistrate judge's stay of discovery from May 2019 to August 2020, during the pendency of an interlocutory appeal taken by several since-dismissed individual defendants. *See Joritz v. Gray-Little*, 822 F. App'x 731, 733 (10th Cir. 2020). She also argues that the district court erred by deciding the University's motion for judgment on the pleadings without allowing her leave to file a second amended complaint.

But again, we do not need to resolve either of these challenges because any error would be harmless. Although Professor Joritz asserts that the stay impeded her from obtaining documents and information that would have strengthened her case, and that her second amended complaint would have incorporated new evidence that would have enhanced her claims of employment discrimination, the district court's dismissal did not depend on the strength of her evidence or sufficiency of her pleadings. Instead, the district court dismissed Professor Joritz's Title VII claims because, as a matter of law, the judgment in the state-court action barred successive litigation of claims arising from her employment with the University.

### E. Standards Applied to Pro Se Litigants

Finally, Professor Joritz argues that, "[o]verall during this case, the Federal District Court applied unduly harsh standards to [her], a pro se litigant." Aplt. Opening Br. at 29. But she does not articulate any prejudice stemming from her shortcomings as a nonlawyer. Rather, she repeats the arguments we discussed and rejected above. "This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks omitted). The district court soundly applied established rules of claim preclusion to the facts of the case before it. These rules apply to Professor Joritz regardless of her pro se status.

### III. CONCLUSION

We affirm the judgment of the district court. We grant Professor Joritz's motions to file her motion to proceed in forma pauperis under seal and ex parte, but

we deny the motion to proceed in forma pauperis because she has not demonstrated an inability to pay the filing fee.  *See* 28 U.S.C. § 1915(a).

                              Entered for the Court

                              Harris L Hartz
                              Circuit Judge